**Charles B. BROWN, Appellant,**

v.

**CAIN CHEMICAL, INC., Appellee.**

**No. 01–91–00097–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 6, 1992.

Rehearing Denied Oct. 1, 1992.

Dennis Herlong, Houston, for appellant.

J. Clark Martin, Steven R. Borgman, Patricia E.W. Stanford, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and COHEN and PRICE[1], JJ.

1. Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at

## OPINION

FRANK C. PRICE, Assigned Justice.

Charles Brown brought suit on a letter agreement for employment with Cain Chemical, Inc. (Cain). Cain plead a general denial and filed a motion for summary judgment on the basis of a valid release. The trial court granted the motion. In a single point of error, Brown asserts there are material issues of fact precluding summary judgment.

In a letter agreement dated April 7, 1987, Cain confirmed an offer of employment to Charles Brown. Cain's letter offered in pertinent part:

> You will have responsibility for Cain Chemical's MIS function and will report directly to the Chief Financial Officer. You will commence work with us on May 1, 1987. Your salary will be at the rate of $100,000 a year commencing at the time of our closing of the acquisition of CCPC which closing is currently anticipated to occur approximately July 1, 1987. For reasons we discussed, you will not be paid for the period prior to the CCPC closing nor will you be paid or your employment continued if the CCPC closing does not occur. You will be eligible for an annual bonus equal to 25% of your salary if the company meets its projected earnings before depreciation, interest and taxes. If the company exceeds such projections by certain levels to be established, your bonus will be increased in increments without any limit on the upside. We will reimburse you on approximately July 1, 1987 for your out-of-pocket expenses incurred on behalf of the company, whether or not the CCPC closing occurs.
>
> The company will grant you stock options. The exact amount of the options and the vesting schedule have not yet been determined; however the options will probably be in an amount approximately equivalent to $37,500 [handwritten] of your annual salary. In addition, you will have the opportunity to pur-

Houston, sitting by assignment.

chase up to $75,000 [handwritten] of equity in Cain Chemical. The purchase of this equity is not mandatory but will provide you with the opportunity to have a greater stake in the Company if you so elect.

Your employment will of course be subject to the other usual terms and conditions of employment for management employees of your level and you will be afforded, commencing with the CCPC closing, the standard benefits package to be made available to management employees.

Brown had been looking for work since November 1986 when he resigned from Coopers and Lybrand, where he had been a partner in charge of management consulting. He picked up the letter from Cain's offices the afternoon it was written and accepted the offer in a letter dated April 10, 1987.

On the morning of July 1, 1987, and six days before the "CCPC" closing, Cain terminated Brown without explanation. Cain requested that Brown sign a release. The release provided that Brown would give up any and all rights he might have pursuant to the April 7th letter, and in consideration thereof Cain agreed in pertinent part:

1. [T]o pay to Employee the amount of $33,333.00, payable, at employee's option, as follows: (a) monthly payments of $8,333.25 each on the first day of July, August, September and October of 1987 or (b) in a single lump sum payment on July 1, 1987 of $33,333.00.

2. [T]o permit Employee, at Employee's option, on or before July 1, 1987, to subscribe for, and if so subscribed for, to purchase 14,997 shares of Class A Common Stock of Cain for an aggregate purchase price of $25,000, on the same terms and conditions as are applicable to a stock subscription made by management employees of Cain whose shares will be subject to the Employee Stockholder Agreement....

3. [T]o waive Cain's right of first refusal included in the Employee Stockholder Agreement ... to purchase the shares of Class A Common Stock....

4. [T]o continue to provide Employee with free life insurance, dependent life insurance, medical coverage, dental coverage, and prescription drug coverage until the first to occur of (a) September 30, 1987 or (b) the date Employee first becomes eligible to participate in medical and hospitalization benefits provided by either a subsequent employer or other group benefits plan....

Brown understood he was fired. He also understood that if he refused to sign the release, he would be reimbursed only for his out-of-pocket expenses incurred to date.

Brown left Cain's offices and had lunch with an attorney friend. They talked about the release. After returning to the office that afternoon, Brown signed the release, elected a lump sum payment, and purchased the $25,000 worth of stock offered in the release. At the time of his discharge, Brown had worked at Cain for 80 days.

Ten months later, in May 1988, Cain was purchased by Occidental Petroleum Corporation. Brown sold all the stock he had purchased under the release agreement for $1.1 million.

On August 19, 1988, Brown filed suit against Cain in state court for breach of contract and breach of the release. Cain removed the case to federal court on the basis of what Cain believed were ERISA claims. Summary judgment on the ERISA claims was granted in favor of Cain, but the contract and release claims were remanded to state court. In state court, Cain moved for summary judgment on the basis of release. The trial court granted the motion, and Brown appeals here.

Brown alleges the April 7 letter was an employment contract. His main grievance is that if Cain had performed, according to the contract, Brown would have purchased $37,500 in stock options and $75,000 in founder's equity, and would have realized $5.0 million rather than $1.1 million. Brown argues the contract immediately vested him with the right to purchase, and the release was thus invalid for lack of consideration. He also argues the release is invalid because Cain, through duress,

coerced him into signing the release. Alternatively, Brown argues Cain should be made to perform under the contract because Cain fraudulently induced him to accept the terms stated in the letter agreement.

As a preliminary matter, Brown plead, in a second amended petition, additional claims for lack of consideration, fraud in the stock transaction under TEX.BUS. & COM. CODE ANN. § 27.01 (Tex. UCC) (Vernon 1968), and conversion. Cain filed a response addressing the lack of consideration for the release, but did not address the claim under section 27.01 or the claim for conversion. The summary judgment states, "All relief requested and not expressly granted is hereby denied."

■ When a trial court's order does not specify the grounds relied on for its ruling, the summary judgment will be affirmed if any of the theories advanced are meritorious. *Insurance Co. of North Am. v. Security Ins. Co.,* 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ). While Cain did not expressly address Brown's claim under section 27.01 or the claim for conversion, Brown could not prevail on those claims if there was a valid release. Since the trial court could have so concluded, this appeal is properly before this Court.

In a summary judgment case, the issue on appeal is whether the movant met its burden of establishing there is no genuine issue of material fact, thereby entitling it to judgment as a matter of law. *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). Evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the nonmovants and any doubts resolved in their favor. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

■ A summary judgment for the defendant, disposing of the entire case, is proper only if, as a matter of law, the plaintiff could not succeed upon any theories plead. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983); *Havens v. Tomball Community Hosp.,* 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied). When a defendant moves for summary judgment based on an affirmative defense, it must conclusively establish all elements of the affirmative defense as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); *Clark v. Pruett,* 820 S.W.2d 903, 905 (Tex.App.—Houston [1st Dist.] 1991, no writ). Where the defendant establishes his right to summary judgment by proving an affirmative defense and the plaintiff, in order to defeat summary judgment, mounts a direct attack on the existence of the affirmative defense, the burden is on the defendant to negate the issues raised to conclusively establish its right to summary judgment as a matter of law. *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975); W. DORSANEO, 4 TEXAS LITIGATION GUIDE § 101.05 (1992). Where, however, the plaintiff raises an affirmative defense in confession and avoidance of the defendant's affirmative defense, the plaintiff must set forth sufficient evidence to give rise to a fact issue with regard to its defense. *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 937 (Tex.1972). The burden is not on the defendant to negate the plaintiff's defense, but rather on the plaintiff to raise an issue of fact with respect to each element of its plea. *Swiderski v. Prudential Property & Casualty Ins.,* 672 S.W.2d 264, 268 (Tex.App.—Corpus Christi 1984, writ dism'd); *see* Patton, *Summary Judgments and Special Exceptions,* in STATE BAR OF TEXAS, 3 ADVANCED CIVIL TRIAL COURSE W30–31 (1991).

In this instance, Cain moved for summary judgment on the affirmative defense of release. It conclusively established that Brown had signed the release and accepted and received the benefits offered. Cain thus established its affirmative defense as a matter of law. It was then incumbent on Brown, in order to avoid summary judgment, to directly attack the release or to

establish fact issues concerning an affirmative defense in confession and avoidance thereof.

Brown raised the affirmative defenses of lack of consideration, duress, and economic duress in confession and avoidance of the release. We proceed to determine whether Brown raised issues of fact with regard to his defenses and defeated summary judgment.

In his sole point of error, Brown claims there are 13 material fact issues that must be submitted to a jury. These issues are:

(a) whether the parties mutually intended that Charles Brown receive the stock irrespective of any term of employment;

(b) whether the parties mutually intended that Charles Brown be employed for a term of 1 year or more;

(c) the value of the stock, salary, and bonus owed Mr. Brown by Cain under their written agreement;

(d) whether Cain fired Charles Brown without just cause;

(e) whether Cain fraudulently induced Mr. Brown into the agreement;

(f) whether Cain committed fraud in a stock transaction within the meaning of Tex.Bus. & Com. Code § 27.01 (Vernon 1968);

(g) whether Cain converted stock which rightfully belonged to Charles Brown;

(h) whether Cain coerced the signing of the release by Mr. Brown or obtained it by fraud;

(i) whether there was a lack of consideration for the release;

(j) whether Charles Brown ratified Cain's fraud, waived his rights, or is estopped to avoid the release;

(k) whether Cain acted with malice to Mr. Brown;

(l) the amount of punitive or exemplary damages which should be awarded; and

(m) reasonable attorneys' fees.

Because issue (k) regarding malice was not raised in Brown's responses in the trial court we cannot consider this contention on appeal. *Clear Creek*, 589 S.W.2d at 679. We also note that missing from this list, but raised in his responses in the trial court

and in his briefs on appeal, is whether the release was obtained by duress. This issue will be considered in our review.

■ The uncontested facts are that Brown signed the release, and that Cain gave, and Brown accepted: (1) $33,333 in a lump sum; (2) 14,997 shares of common stock, for which Brown paid $25,000 and sold one year later for over $1.1 million; (3) its waiver of a first right of refusal under an employee stock agreement signed by Brown and his wife; and (4) free life insurance, dependent life insurance, medical and dental coverage, and prescription drug coverage for three months.

Brown claims the release is void because Cain "failed to offer Mr. Brown legally valid consideration." Brown argues the stock and salary paid under the release had already been promised him in the employment agreement, and there can be no "benefits from the release" as a matter of law. Thus, taking part of the compensation is not ratification and does not preclude him from seeking the remainder due.

The employment letter agreement specified that Brown's salary would commence when the acquisition of "CCPC" was closed, and that Brown would not be paid for the period prior to the closing. When the release was offered to Brown, Cain had not yet closed on "CCPC," and Brown presented no summary judgment evidence to establish the closing was certain and imminent at the time. Therefore, Brown was owed no salary. The payment of $33,333 to Brown was valuable consideration for the release.

Similarly, the insurance benefits, which Brown claims were already his under the term "the standard benefits package to be made available to management employees," were conditioned on the closing of "CCPC." Since the release was signed before the closing, the insurance benefits were valuable consideration.

The agreement specified that the company "will grant" stock options. However, the material terms of the options—price, time, and number of shares—were conditioned on a vesting schedule "not yet deter-

mined." Brown admitted in deposition testimony he understood the stock option program was not in place and was dependent on the company's recent acquisitions and company performance. He presented no summary judgment evidence to prove that the terms of the stock option program were established when the release was offered to him. Likewise, the term offering an "opportunity to purchase up to $75,000 of equity" did not specify the material terms of time and number of shares. Consequently, Brown cannot say he was vested with the stock options, and the $25,000 in stock offered by Cain was valuable consideration.

Lastly, while Brown focuses on the benefits that are of the same form as the compensation included in the letter agreement, he ignores the valuable consideration Cain gave by waiving its first right of refusal to repurchase his shares under an employee stockholder agreement signed by Brown and his wife on July 1, 1987. This waiver was not part of the employment letter agreement and enabled Brown to sell his shares directly to Occidental Petroleum. The marketability of Brown's shares was valuable consideration for the release.

We hold there is no material fact issue with regard to whether valuable consideration was given by Cain for the release. We next consider whether Brown established fact issues on the elements of his affirmative defenses of duress and economic duress and defeated summary judgment.

■ The courts in Texas have consistently followed the rule that, as a matter of law, there can be no duress unless: (1) there is a threat to do something that a party threatening has no legal right to do, (2) there is some illegal exaction or some fraud or deception, and (3) the restraint is imminent and such as to destroy free agency without present means of protection. *Simpson v. MBank Dallas*, 724 S.W.2d 102, 109 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Brown asserts Cain made two threats: "1) we'll take it all away if you don't sign this, and 2) we'll even take away the partial compensation if you don't sign it today."

In *Hurt v. Standard Oil Co.*, the employer offered appellant early retirement. Appellant testified he did not want to retire, but that he had no choice in the matter because the company said, "This is it. Don't argue." The court held:

> While he was not given any choice about early retirement, nowhere in the testimony was he compelled to accept the listed benefits against his will. He could have refused the benefits and instituted his suit. There was certainly no compulsion which, in effect, substituted the will of the appellee for the will of the appellant in accepting these benefits over a period of nearly two years before filing the present action.

444 S.W.2d 342, 347 (Tex.Civ.App.—El Paso 1969, no writ).

We find *Hurt* applicable here. Like the appellant in *Hurt*, Brown failed to prove the first element of duress—a threat. As a matter of law, Brown failed to raise a fact issue on every element of the affirmative defense of duress.

■ Brown asserts economic duress because, "Cain threatened to take the food off of Mr. Brown's table and the roof from over his head." A contract may be invalid or unenforceable by reason of economic duress where undue or unjust advantage has been taken of a person's economic necessity or distress to coerce him into making the agreement. *First Texas Sav. Ass'n of Dallas v. Dicker Center*, 631 S.W.2d 179, 186 (Tex.App.—Tyler 1982, no writ); 17 C.J.S. *Contracts*, § 177 (1963). Economic duress must be based on the acts or conduct of the opposite party and not merely on the necessities of the purported victim, or on his fear of what a third person might do. *First Texas*, 631 S.W.2d at 186. The summary judgment evidence reflects that despite having children to support in college and mortgage payments to make, Brown used $25,000 of the $33,333 lump sum payment paid by Cain to exercise a stock option. Brown could not have made this purchase if, as Brown alleges, he would be without food and shelter. As a matter of law, Brown failed to raise a fact

issue on the affirmative defense of economic duress.

Because Brown failed to establish fact issues with regard to his defenses to the release, we hold there was a valid release as a matter of law. The judgment is affirmed.