Harrold E. ("Gene") WRIGHT, Don Kennard, Pat S. Holloway, and Pat S. Holloway, P.C., Appellants

v.

Michael SYDOW and Verner, Liipfert, Bernhard Mcpherson & Hand, Chartered, Appellees

No. 14–03–00222–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 24, 2004.

---

5. *Id.*

538

William J. Eggleston, R. Wade Vandiver, Houston, for appellants.

David J. Beck, Fields Alexander, Russell S. Post, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

### I. Introduction.

Harrold Wright and Don Kennard hired Michael Sydow and Verner, Liipfert, Bernhard Mcpherson & Hand, Chartered to represent them in *qui tam*[1] litigation. Wright and Kennard anticipated reaping a great deal of money from the suits and Sydow and Verner, Liipfert were given an interest in any proceeds they obtained. But, less than a year after their relationship began, it soured, leaving Wright and Kennard crying foul and attempting to avoid the preclusive effects of a settlement agreement by secretly assigning causes of action days before they executed the agreement. Wright and Kennard filed this suit several years later.

Wright and Kennard, along with Pat Holloway, a lawyer and friend of the two, and Pat Holloway, P.C., appeal a summary judgment entered against them in their suit against Sydow and Verner, Liipfert. Wright, Kennard, Holloway and Holloway, P.C. bring six issues on appeal. We have divided the issues into three groups:

> (1) *Wright's and Kennard's substantive claims related to the Settlement Agreement covering the qui tam litigation.* These claims include three issues relating to alleged fraudulent acts that Wright and Kennard released in a settlement agreement with Sydow and Ver-

---

1. A *qui tam* action is one authorized by statute in which a private citizen sues an individual or business to recover a penalty, part of which the government or a public institution will receive. *See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 728 (2d ed.1995).

ner, Liipfert. In these issues, they attempt to avoid the release by claiming (a) fraud and duress, (b) that some acts occurred after the settlement agreement, and (c) violations of the Texas Lawyers' Disciplinary Code.

(2) *Wright's and Kennard's procedural issue involving the trial court's denial of their motion for continuance.* In this issue, Wright and Kennard complain that the trial court wrongly denied their motion for continuance of the summary judgment hearing.

(3) *Pat Holloway's and Pat Holloway, P.C.'s claims.* Pat Holloway and Pat Holloway, P.C. raise two issues. In the first, they claim that the trial court wrongly refused to allow Pat Holloway to recover on claims Wright and Kennard assigned to him days before the Settlement Agreement was executed. In the second, they complain that the court should not have dismissed Pat Holloway, P.C.'s claims for fraudulent inducement and negligent misrepresentation.

We overrule all of the issues except the issue pertaining to Pat Holloway, P.C.'s claims. Wright's and Kennard's substantive attacks on the Settlement Agreement fail because they released the claims, and their attempts to circumvent the release fail. The procedural issue fails because the trial court did not abuse its discretion in denying their motion for continuance, as they requested it only to gather more evidence for their fatally flawed duress and fraud claims. Holloway's claim fails because it involved an assignment of a malpractice claim made solely to avoid the preclusive effect of a Settlement Agreement. Finally, Pat Holloway, P.C.'s claim is reversed and remanded because Sydow

and Verner, Liipfert failed to address that claim in their summary judgment motion.

## II. Facts and Procedural Background.

### A. The Factual Background.

This suit arose after Sydow and Verner, Liipfert represented Wright and Kennard from December 1997 to October 1998 in False Claims Act ("FCA") litigation. Under the FCA, individual citizens may bring a *qui tam* action, as relators, in the name of the government seeking damages for fraud committed against the government. *See* 31 U.S.C. §§ 3729–3733 (1994). In exchange for these efforts, a relator receives a portion of the recovery in the suit—up to thirty percent of the proceeds of the action—plus reasonable expenses, costs, and attorney's fees. *Id.* § 3730(d). According to Wright, Kennard, Holloway, and Holloway, P.C., FCA litigation is unique because it "creates an entrepreneurial atmosphere .... it is a joint venture between the relator and his attorneys to collect money for a third-party."

Wright filed suit under the FCA against a large number of oil and gas companies alleging underpayment of royalties due the federal government on oil, gas, and natural gas liquids produced from federal onshore, Indian, and outer-continental-shelf lands (the "original FCA lawsuit"). He needed competent counsel to represent him in this and other complex litigation. After meetings among Sydow and Verner, Liipfert, and Wright, and Kennard, everyone agreed Sydow and Verner, Liipfert would represent Wright and Kennard as lead counsel.[2]

The relationship soured rather quickly. Among other complaints, Wright and Ken-

**2.** Four different types of suits were discussed. In some, Sydow and Verner, Liipfert represented only Wright; in some they represented only Kennard. For purposes of the issues in this appeal, however, this distinction is unimportant.

nard believed that Sydow and Verner, Liipfert had misrepresented

(a) their experience in the types of suits in which Wright and Kennard were involved,

(b) their intent to diligently represent Wright and Kennard, and

(c) their lack of conflicts with the litigation.

Less than a year after Wright hired them, he informed Sydow and Verner, Liipfert they were being discharged as his attorneys. He claimed the discharge was for cause for numerous reasons. Sydow and Verner, Liipfert responded with a letter disputing Wright's claims and informing Wright that Sydow and Verner, Liipfert retained "all of [their] rights under the respective retention agreements and applicable law."

Following this, in October of 1998, Sydow and Verner, Liipfert filed motions to withdraw as counsel for Wright and Kennard and motions to intervene in the three pending lawsuits.[3] Sydow and Verner, Liipfert attached to each motion a copy of Wright's discharge letter. Sydow and Verner, Liipfert sought to withdraw as attorneys for both Wright and Kennard, although Wright did not mention Kennard in the discharge letter.

United States District Judge John Hannah, Jr., the presiding judge over the three lawsuits, ruled on Sydow and Verner, Liipfert's motions in November of 1998, finding that

(1) on October 21, 1998, Wright, acting for himself and on behalf of Kennard, notified Sydow and Verner, Liipfert that they had been discharged in all pending FCA litigation;

(2) Sydow and Verner, Liipfert disputed they were discharged for cause; and

(3) unless he allowed the attorneys to intervene, their ability to protect their interest in the litigation would be impaired.

The court granted Sydow and Verner, Liipfert's request to withdraw as counsel for Wright and Kennard and also allowed them to intervene in the pending FCA actions. In early December of 1998, Wright, Kennard and Holloway received copies of Judge Hannah's orders.

Several months later, in April of 1999, the parties executed a Settlement Agreement releasing and discharging one another "from any and all claims, demands and causes of actions, including, but not limited to, those in contract, warranty or tort, of negligence or gross negligence, of quantum meruit, under common law or statute, based upon any acts and/or omissions" of the parties.[4]

## B. The Procedural Background of this Suit.

More than a year after executing the Settlement Agreement, Wright and Kennard sued Sydow and Verner, Liipfert, asserting legal malpractice, fraud, negligent misrepresentation, negligence, breach of contract, breach of fiduciary duty, conversion, negligent supervision, fraudulent inducement, and Texas Deceptive Trade Practices Act ("DTPA") violations. Wright and Kennard alleged that their legal malpractice claims were continuing because Sydow and Verner, Liipfert continued to use confidential information acquired when they represented Wright and Kennard. Later, in Wright's and Ken-

---

3. No record evidence reflects that Wright, Kennard, or Holloway were ever served with notice of the motions.

4. Crowley & Douglas, L.L.P. and Timothy D. Crowley (collectively "Crowley Douglas"), who also represented Wright in the FCA lawsuits, were parties to the Settlement Agreement but were not parties to the suit below.

nard's Second Amended Petition, Holloway, P.C. was listed as a plaintiff, asserting a claim for fraudulent inducement. The petition also stated that the action was being brought in part by Pat Holloway, individually, as an assignee of Wright's and Kennard's claims.

Sydow and Verner, Liipfert filed a motion for summary judgment arguing that (1) Wright's and Kennard's claims had been settled and released by the Settlement Agreement; (2) Wright and Kennard could not assign their legal malpractice claims to Pat Holloway under Texas law and, (3) Holloway, P.C.'s claims failed because Holloway, P.C. was never represented by Sydow or Verner, Liipfert and Texas law forbids non-clients from suing for legal malpractice.

The trial court granted summary judgment in favor of Sydow and Verner, Liipfert, holding in part that

- all claims asserted by Wright and Kennard had been released by the Settlement Agreement;
- no genuine issue of fact existed regarding the alleged fraud and/or duress;
- the purported assignments of claims and causes of action to Pat Holloway individually were void and unenforceable under Texas law;
- the claims of Holloway, P.C. were invalid because there was no privity between Holloway, P.C. and Sydow and Verner, Liipfert; and
- Wright's and Kennard's Motion for Continuance was denied.

This appeal ensued.

### III. The Standard of Review.

The standard of review for five of the six issues is the well-established standard applied to summary judgments. The movant for summary judgment has the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In deciding whether there is a material disputed fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

A defendant, as movant, is entitled to summary judgment if it (1) disproves at least one element of each of the plaintiff's theories of recovery, or (2) pleads and conclusively establishes each essential element of an affirmative defense, rebutting the plaintiff's cause of action. *Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155, 159 (Tex.App.—Houston [14th Dist.] 2002, pet. denied).

### IV. WRIGHT'S AND KENNARD'S SUBSTANTIVE CLAIMS RELATED TO THE SETTLEMENT AGREEMENT.

We now turn to Wright's and Kennard's substantive issues related to the Settlement Agreement. First, they claim the trial court erred in dismissing their claims because the Settlement Agreement was procured by duress and fraud, and therefore was not enforceable. They then claim the court should not have dismissed some of their fraud claims because the claims arose after the effective date of the Settlement Agreement. Finally, relying on Texas Disciplinary Rule 1.08, they argue the court should not have dismissed Kennard's claims because Sydow and Verner, Liipfert violated the rule when they entered into the Settlement Agreement with Kennard, who claims he had no counsel at the time. We address each issue in turn.

## A. The Settlement Agreement is Enforceable; It was Not Procured Through Duress or Fraud.

Sydow and Verner, Liipfert moved for summary judgment arguing, in part, that Wright and Kennard settled and released their claims by executing the Settlement Agreement.

 A release that is valid on its face is a complete bar to any action based on matters covered in the release. *McMahan v. Greenwood*, 108 S.W.3d 467, 478 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Only when it is set aside does the release become ineffective. *Id.* In a summary judgment context, once a release is properly pleaded, the burden shifts to the other party to offer proof that the release should be set aside. *Id.* Therefore, once Sydow and Verner, Liipfert pleaded and proved the Settlement Agreement, Wright and Kennard had the burden to present evidence raising a fact issue as to duress and fraud. Wright and Kennard presented evidence they believed showed the Settlement Agreement was unenforceable because it had been procured through duress and fraud. In its final judgment, the trial court found that "[a]ll claims of Wright and Kennard asserted in this lawsuit were released by those parties' execution of the Settlement Agreement."

We review the evidence below, and, as we explain, we agree with the trial court that the facts of this case reveal no duress or fraud.

### 1. Duress.

#### a. *Wright's and Kennard's Claims.*

Wright and Kennard argue that they executed the Settlement Agreement under economic duress. They claim Sydow and Verner, Liipfert created the duress by intervening in the FCA suits and claiming—in "bad faith"—an interest in Wright's and Kennard's potential recoveries in the FCA litigation. According to Wright and Kennard, the interventions jeopardized Wright's and Kennard's ability to continue with the pending suits because they were unable to find lawyers willing to prosecute the inherently expensive and risky FCA litigation while Sydow and Verner, Liipfert asserted an interest in the proceeds.[5]

Wright and Kennard contend that Sydow and Verner, Liipfert asserted the claims to coerce a settlement and gain proceeds they knew were not theirs.[6] According to Wright and Kennard, Sydow and Verner, Liipfert knew their intervention was wrongful, so they cannot assert they had a "legal right" to intervene. And, Wright and Kennard claim, Sydow and Verner, Liipfert confirmed their bad intent by filing the intervention and motion to withdraw and fraudulently representing they had sent notice of the intervention to all attorneys of record when they had not.

#### b. *The Law Governing Economic Duress.*

 Generally, when one coerces another to execute a contact by taking undue

---

**5.** In a post-submission brief, Wright and Kennard argue that the intervention itself was not the cause of the duress, it was the fact that appellees asserted claims to the FCA recovery. This is a distinction without a difference.

**6.** In support of their allegations, Wright and Kennard provided the trial court with their affidavits, an affidavit from Holloway, P.C., an affidavit from Claude Welch, an attorney

involved with representing Wright in the *qui tam* litigation, and an affidavit executed by Michael Angelovich, an attorney employed with the law firm of Nix, Patterson & Roach, L.L.P. The Nix, Patterson & Roach firm was also involved in representing Wright in the *qui tam* litigation. Wright and Kennard also furnished an affidavit from a law professor specializing in legal ethics.

or unjust advantage of the person's economic necessity or distress, the contract may be invalid or unenforceable. *Brown v. Cain Chem., Inc.,* 837 S.W.2d 239, 244 (Tex.App.—Houston [1st Dist.] 1992, writ denied). This legal theory is called economic duress. It requires both the acts or conduct of the opposing party and the necessities of the alleged victim or his fear of what a third person might do. *Id.* The victim's plight alone will not suffice; it must be coupled with the bad acts of the transgressor. *Id.* What constitutes duress is a question of law for the court. *Windham v. Alexander, Weston & Poehner, P.C.,* 887 S.W.2d 182, 185 (Tex.App.—Texarkana 1994, writ denied); *Matthews v. Matthews,* 725 S.W.2d 275, 278 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). However, whether duress exists in a particular situation is generally a fact question dependent upon all the circumstances surrounding the situation, including the mental effect on the party claiming duress. *Windham,* 887 S.W.2d at 185; *Matthews,* 725 S.W.2d at 278.

■ Economic duress consists of (1) a threat to do something a party has no legal right to do, (2) an illegal exaction or some fraud or deception, and (3) an imminent restraint that destroys the victim's free agency and leaves him without a present means of protection. *Dale v. Simon,* 267 S.W. 467, 470 (Tex. Comm'n App.1924); *King v. Bishop,* 879 S.W.2d 222, 223 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Brown,* 837 S.W.2d at 244. Wright and Kennard had the burden to raise a fact issue as to each of these elements. *See McMahan,* 108 S.W.3d at 478; *Brown,* 837 S.W.2d at 242.

■ Finally, one additional rule is relevant and important. When a party making a demand has to resort to the courts to enforce the demand, no duress occurs—even if the demand is wrongful or unlaw-ful—because the courts provide the victim with adequate protection. *Dale,* 267 S.W. at 470; *see also Cont'l Cas. Co. v. Huizar,* 740 S.W.2d 429, 430 (Tex.1987) (Under Texas law, "[a] threat to institute a civil suit or even the actual institution of suit does not, as a matter of law, constitute duress."); *Ward v. Scarborough,* 236 S.W. 434, 437 (Tex. Comm'n App.1922) ("The courts have drawn a distinction between the cases where, although the claim asserted ... is wrongful or unlawful, the party asserting the claim ... is compelled to resort to the courts to enforce [it], and the cases where the party making [the] demand possesses ... the power to enforce the demand ... without resort to the courts. In the former case it is held ... with uniformity ... that there is no duress.").

■ In addition, both state and federal courts have ample tools to punish those who bring a suit in bad faith. *See* TEX. R. CIV. P. 13; FED. R. CIV. P. 11. For this reason, questions of bad faith in a suit must be resolved in the court where the action is pending. *See Griffith v. Geffen & Jacobsen, P.C.,* 693 S.W.2d 724, 728 (Tex. App.—Dallas 1985, no writ).

c. *The Alleged Bad Faith Actions Involve Filing Law Suits.*

■ We turn now to Wright's and Kennard's summary judgment evidence, which they contend raises a fact issue regarding Sydow and Verner, Liipfert's "legal right" to intervene. They claim that Sydow and Verner, Liipfert's intervention was wrongful and in "bad faith" because Sydow and Verner, Liipfert knew their claim to any recoveries in the *qui tam* litigation was baseless. Even if we assume Wright's and Kennard's evidence is true, and that Sydow and Verner, Liipfert pursued its claims in bad faith, Wright's and Kennard's claims fail.

Sydow and Verner, Liipfert entered into contingent fee contracts with Wright and Kennard concerning the underlying FCA litigation, and intervened in the FCA litigation to protect any fees they may have been entitled to receive under the representation agreements. Sydow and Verner, Liipfert openly contested that their discharge was with cause. Under Texas law, because they resorted to the courts to pursue whatever rights they may have had under the contingent fee contracts and to dispute the discharges for cause, no economic duress can occur.

Wright and Kennard attempt to engraft on economic duress a requirement that the claim must be brought in good faith. However, as we have discussed, the Texas Supreme Court has held since the late nineteenth century that no compulsion occurs when one party sues, even if the suit is brought in bad faith. *See Taylor v. Hall,* 71 Tex. 213, 9 S.W. 141, 142–43 (1888).

A corollary to this rule is that disputes must be settled in the case in which and the court before which they arise. The courts have been given broad powers to punish those abusing the court system and provide litigants sufficient protection. *See* TEX. R. CIV. P. 13. Subsequent or satellite litigation—as Wright and Kennard have initiated here—on issues relating to a suit is not a proper remedy and is an inefficient and improper use of the court system. *See Trevino v. Ortega,* 969

S.W.2d 950, 953 (Tex.1998); *McMahan,* 108 S.W.3d at 482; *Detenbeck v. Koester,* 886 S.W.2d 477, 481 (Tex.App.—Houston [1st Dist.] 1994, no writ).

Sydow and Verner, Liipfert intervened through the court, pursuing whatever rights they may have had under their fee agreements, and Wright and Kennard could have availed themselves of the protections of the court. Had the intervention been wrongful, Wright and Kennard could have tried the issue in the federal court before the entry of Judge Hannah's order, or following their receipt of the order, but they chose not to. *See* FED. R. CIV. P. 60(b) (stating a party may file a motion to be relieved of a judgment or order issued through mistake, neglect or fraud, among other reasons, within a year of the date the order was issued).[7]

In sum, we find Wright and Kennard failed to establish that the Settlement Agreement was signed under duress.

*2. Fraud.*

Wright and Kennard also claim the Settlement Agreement is unenforceable because it was procured through these illegal acts:

(1) fraud committed to convince Wright and Kennard to hire Sydow and Verner, Liipfert;

(2) fraud committed when Sydow and Verner, Liipfert illegally claimed owner-

---

**7.** Wright and Kennard raise other potential problems with the court's ruling on this issue—they claim that Sydow and Verner, Liipfert had no right to pursue their claims because Wright and Kennard discharged them for cause and that Wright's and Kennard's affidavits prove the hardship the suits imposed on them. But these claims still are rebuffed by the general rule we have discussed. Three other reasons also support our decision that these claims are without merit. First, they have cited no cases supporting

their theory that we should hold the general rule in abeyance because of the complexity of the suits and their inability to obtain other counsel because of Sydow and Verner, Liipfert's claims to proceeds. Second, we have found no cases that have done this. Third, the affidavits represent Wright's and Kennard's states of mind. Economic duress must be based on the acts of the opposing party and not merely the necessities of the alleged victim. *See Brown,* 837 S.W.2d at 244.

ship in possible recoveries of Wright and Kennard in the FCA litigation; and

(3) fraud occurring when Sydow and Verner, Liipfert did not notify Wright and Kennard that they had intervened in the lawsuit pending in Judge Hannah's court.[8]

### a. The Law Regarding Fraud.

■■■ Under Texas law a person has a duty to abstain from fraudulently inducing another to enter into a contract. *See McMahan,* 108 S.W.3d at 479 (citing *Haase v. Glazner,* 62 S.W.3d 795, 798 (Tex. 2001)). When one individual fraudulently induces another to enter into a contract, no contract results because the one who was fraudulently induced gave no real consent to the agreement. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 178 (Tex.1997). A settlement agreement or release is a contract and, like other contracts, may be avoided if it was procured through fraud. *Id.*

■■■ Fraud requires a material false representation that the speaker knew was false or that was made recklessly without any knowledge of the truth and as a positive assertion. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 524 (Tex.1998). The speaker must intend that the other party act upon the statement. *Id.* The party must act in reliance upon the representation and suffer injury. *Id.; McMahan,* 108 S.W.3d at 479. In addition, implicitly, the rule requires that the victim not know that the statement is false. *McMahan,* 108 S.W.3d at 479–81 (finding that knowledge of the alleged fraud defeated a claim that a settlement agreement was procured through fraud). This last, implicit requirement,

prevents Wright and Kennard from establishing the necessary elements of their fraud claim.

### b. *Wright and Kennard Knew of the Alleged Acts Before Signing the Settlement Agreement.*

■■■ Wright and Kennard cannot establish their fraud claim because they knew about the alleged fraudulent acts before they executed the Settlement Agreement. The language contained in their assignment to Holloway, signed before the Settlement Agreement, describes the very acts of which they now complain. The assignment stated that

● Sydow and Verner, Liipfert had "lied and misrepresented facts" to Wright, Kennard, and Judge Hannah;

● the intervention was frivolous; and

● Wright and Kennard executed the assignment because of the coercion and duress exerted by Sydow and Verner, Liipfert.

By the express language of the Settlement Agreement, Wright and Kennard released any and all claims against Sydow and Verner, Liipfert which occurred as of the execution date, April 12, 1999, whether known or not, including claims surrounding Sydow and Verner, Liipfert's representation of them in the FCA litigation, as well as their intervention in those suits. The Settlement Agreement also contains a merger clause, stating that "all promises, negotiations, or representations not expressly set forth in this Agreement are of no force and effect."

In summary, because Wright and Kennard failed to establish their claims of fraud and duress, the trial court properly granted summary judgment based upon

---

**8.** The distinction between fraud and duress is that the injury accomplished through fraud is done without the knowledge of the victim, while with duress, the victim is fully aware of

the illegal element. 25 AM. JUR. 2D *Duress & Undue Influence* § 2 (1996). Consequently, some of our discussion regarding duress applies to our discussion of the alleged fraud.

the Settlement Agreement and their first issue is overruled.

## B. The Trial Court Did Not Err in Dismissing Wright's and Kennard's Post–Settlement Agreement Claims.

 In their second issue, Wright and Kennard argue the trial court erred in granting summary judgment on their post-Settlement Agreement claims. Wright and Kennard claimed Sydow and Verner, Liipfert used confidential information of Wright and Kennard in representing an Indian tribe. However, as with the fraud claims, Wright and Kennard knew of the representation when they executed the Settlement Agreement and thus released these claims.[9] Again, their knowledge is evidenced by language contained in the assignment to Pat Holloway:

> D. In addition, [Sydow and Verner, Liipfert's] Settlement Agreement misappropriated confidential and proprietary information obtained by them in the course of their representation of Wright and Kennard, and used it for their own purposes to obtain separate and conflicting representation of the Alabama and Coushatta Indian Tribes of Texas [ ]. E. . . . In violation of their duties of undivided loyalty to Wright and Kennard, [Sydow and Verner, Liipfert] agreed to represent the Tribe[s] in separate litigation by it. They filed a lawsuit for the Tribe[s] which competed directly with one lawsuit they already had filed for Wright; and with another lawsuit they had agreed to file for Wright and Kennard. The lawsuit [Sydow and Verner, Liipfert filed] on behalf of the Tribe[s] was based entirely on confidential and proprietary information of Wright and Kennard which [Sydow and

Verner, Liipfert] had obtained in the course of their representation of Wright and Kennard.

Clearly, Wright and Kennard knew of these post-Settlement Agreement claims, and they do not argue that different conduct by Sydow and Verner, Liipfert or different harm gave rise to their post-Settlement Agreement claims. Instead, in a unique twist, they argue that Sydow and Verner, Liipfert's continued use of the confidential information represents a continuing breach of the duty it owed to them as clients; as a continuing breach, these claims survive the execution of the Settlement Agreement. We think not.

 Under the legal injury rule, a tort cause of action accrues when the tort is completed—when the act is committed and damages are suffered. *Goggin v. Grimes*, 969 S.W.2d 135, 137 (Tex.App.—Houston [14th Dist.] 1998, no pet.). Wright and Kennard complain that Sydow and Verner, Liipfert used Wright's and Kennard's confidential information to represent the Tribes. Under this scenario, the injury-producing event occurred when Sydow and Verner, Liipfert undertook representation on behalf of the Tribes. Wright and Kennard knew of this conduct before signing the Settlement Agreement. Yet, they released Sydow and Verner, Liipfert from any claims or causes of action in connection with the FCA litigation. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex.2000). They have failed to establish that their post-Settlement Agreement claims survived execution of the Settlement Agreement. The trial court properly granted summary judgment on these claims, and we overrule their second issue.

---

9. According to the record, Sydow and Verner, Liipfert filed suit on behalf of the tribes five days after Wright's letter discharging them, and six months before the Settlement Agreement was executed.

## C. The Trial Court Did Not Err in Dismissing Kennard's Claims that the Firm Violated Texas Disciplinary Rule 1.08.

In their third issue, Wright and Kennard argue that the trial court erred in dismissing Kennard's claims, alleging that Sydow and Verner, Liipfert violated Texas Disciplinary Rule 1.08(g) when they entered into the Settlement Agreement with Kennard because Kennard claimed in a summary judgment affidavit that he was not represented by counsel.

Disciplinary Rule 1.08(g) provides the following:

> A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.08(g), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. A.

Relying on *Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.), Wright and Kennard argue that a release made in contravention of the Disciplinary Rules is invalid and unenforceable.

### 1. Contracts between attorneys and their clients are closely scrutinized and presumed invalid; when the attorney-client relationship is severed, the presumption ends.

Generally, courts closely scrutinize contracts between attorneys and their clients negotiated during the existence of the attorney-client relationship. *Keck*, 20 S.W.3d at 699. They do this because the relationship is fiduciary in nature and, therefore, courts presume those contracts are unfair or invalid. *Id.* If the attorney-client relationship has been severed before the parties enter into an agreement, the presumption does not apply. *Id.* at 699 n. 3.

Months before the Settlement Agreement was executed, the federal district court severed the attorney-client relationship between Kennard and Sydow and Verner, Liipfert. Kennard knew this at least by December 1998, about five months before he executed the Settlement Agreement.[10] Indeed, the Settlement Agreement states, "[a]lthough Kennard alleges that he has not yet terminated [Sydow and Verner, Liipfert] ..., the Court found by its Order dated November 9, 1998 that Wright has terminated [Sydow and Verner, Liipfert] on behalf of Kennard." Therefore, although appellants argue that the Disciplinary Rules provide the standard of care governing execution of the Settlement Agreement, the attorney-client relationship between Kennard and Sydow and Verner, Liipfert had ended five months before its execution. Because the fiduciary nature of the relationship ended before Kennard signed the Settlement Agreement, the presumption of invalidity no longer accompanies it. For this reason, we examine it in light of general contract

---

**10.** Wright and Kennard argue that the attorney-client relationship between Kennard and Sydow and Verner, Liipfert was not severed because Kennard never discharged Sydow and Verner, Liipfert. However, when the court's order was rendered, the representation had ended whether Kennard agreed to it or not. *Cf. State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627–28 (Tex.1998) (noting that subject to the discretion of the court, an attorney may withdraw from a case).

principles.[11] *See id.*

### 2. A review of the facts of this case based on general contract principles reveals no prejudice to Kennard.

■ Here, the evidence indicates the parties negotiated and executed the Settlement Agreement in an arm's length transaction. First, Keith Spickelmier, the attorney representing Sydow and Verner, Liipfert in the Settlement Agreement matter, stated by affidavit that all negotiations regarding the agreement were conducted through attorneys for each of the parties and that Wright's attorney—not Sydow or Verner, Liipfert—drafted the original agreement. Second, Wright and Kennard furnished affidavits attesting to their business acumen and, specifically, Kennard's affidavit states he was a Texas state legislator for twenty years, concentrating much of his career "in pursuit of the public interest as it relates to the oil and gas industry." Kennard was a sophisticated party in the transaction.[12] Third, the terms of the Settlement Agreement were favorable to Kennard because, unlike Wright, the Settlement Agreement did not require him to pay anything to Sydow and Verner, Liipfert. *See, e.g., Schlumberger,* 959 S.W.2d at 179 (construing a release under contract interpretation rules, upholding release and noting various factors established it was an arm's length transaction).

■ In addition, even assuming Kennard was not represented and that Sydow and Verner, Liipfert did not inform him that he should acquire independent representation, this would merely establish a violation of the Disciplinary Rules. A violation of the Disciplinary Rules does not necessarily establish a cause of action, nor does it void an otherwise valid contract executed outside of the attorney-client relationship. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT preamble ¶ 15; *Cuyler v. Minns,* 60 S.W.3d 209, 214 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). And Kennard has not cited us any case with these or any facts in which a court has held that a cause of action exists based on this disciplinary rule.

We have already held that the Settlement Agreement is not voidable due to any alleged duress or fraud. We decline to use Disciplinary Rule 1.08 to void an otherwise valid settlement agreement entered into at arm's length and by which Kennard obtained favorable results. *Cf. Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 553 (Tex. 2001) (noting that courts should exercise judicial restraint in deciding to hold an arm's length transaction void on public policy grounds). We overrule Kennard's third issue.

---

**11.** This and other factors distinguish *Quintero* from the subject case. In *Quintero,* an attorney representing the appellants allowed them to enter into a joint settlement agreement which gave them a significantly lower award than the verdict they had received through their jury trial. *See Quintero,* 709 S.W.2d at 227–28. The Corpus Christi appellate court determined that a contract made in violation of a Disciplinary Rule was against public policy and was, therefore, void. *Quintero,* 709 S.W.2d at 229. However, in that case the attorney-client relationship existed at the time the clients signed the joint settlement at issue and the fiduciary relationship was intact, thus, requiring a "closer scrutiny" than would an arm's length transaction.

**12.** In the Settlement Agreement, Kennard warranted that he was represented by counsel. "KENNARD acknowledges that for purposes of negotiating and executing this Agreement, that KENNARD has always been represented by his own counsel and that Nix, Patterson & Roach, L.L.P. has at all times represented only WRIGHT."

## V. WRIGHT'S AND KENNARD'S PROCEDURAL ISSUE.

### A. The Trial Court Did Not Err in Denying the Motion for Continuance.

In their procedural issue, Wright and Kennard claim the trial court erred in denying their motion for continuance under Rule 166a(g). *See* TEX. R. CIV. P. 166a(g).[13]

#### 1. The Standard of Review.

 A request for a continuance is within the trial court's discretion, and we will not disturb the trial court's ruling unless the trial court abused its discretion, or in other vernacular, unless the trial court acted arbitrarily and unreasonably. *Karen Corp. v. Burlington N. & Santa Fe Ry. Co.*, 107 S.W.3d 118, 124 (Tex.App.—Fort Worth 2003, pet. denied). When a party receives notice of a summary judgment hearing and the notice gives more than the twenty-one days required by the rules of civil procedure, denial of a motion for continuance based on lack of time to prepare generally is not an abuse of discretion. *Id.; Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 485 (Tex.App.—Dallas 1995, writ denied). Courts may presume that a plaintiff has sufficiently investigated his own case prior to filing it. *Laughlin v. Bergman*, 962 S.W.2d 64, 66 (Tex.App.—Houston [1st Dist.] 1997, pet. denied).

#### 2. The Trial Court Did Not Abuse its Discretion.

 According to Wright and Kennard, if the trial court had granted them extra time, they could have shown that Sydow and Verner, Liipfert had no legal right to assert a continuing interest in the underlying lawsuits. They also argue that additional discovery was necessary to develop their allegations of fraud and duress. However, we already have held that the foundations for their fraud and duress claims were infirm. No matter how much additional discovery they procured to show that Sydow and Verner, Liipfert had intervened in bad faith or that Sydow and Verner, Liipfert were using confidential information, Wright and Kennard still could not prevail.

For this reason, we hold that the trial court did not abuse its discretion in refusing to grant a continuance to allow Wright and Kennard more time for discovery. *See, e.g., Karen Corp.*, 107 S.W.3d at 124 (affirming denial of motion for continuance because issue had been established as a matter of law and further discovery was therefore unnecessary). We overrule Wright's and Kennard's procedural issue.

## VI. THE ISSUES RELATED TO HOLLOWAY AND TO HOLLOWAY, P.C.

### A. The Trial Court Did Not Err in Dismissing Wright's and Kennard's Claims Assigned to Holloway Individually Because the Assignment Violates Public Policy.

Wright, Kennard and Holloway contend that the trial court erred in dismissing the claims assigned to Holloway individually because they were assigned before Wright and Kennard executed the Settlement Agreement.[14] Consequently, Wright and

---

13. Rule 166a(g) states:
 Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affida-

vits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 TEX. R. CIV. P. 166a(g).

14. Wright and Kennard executed the assignments to Pat Holloway individually on March

Kennard argue that the claims were not released by the Settlement Agreement and that Holloway may prosecute them. In addition, they argue that their other claims against Sydow and Verner, Liipfert, such as their claims for fraud, breach of contract, misrepresentation, and violations of the Deceptive Trade Practices Act, are freely assignable.[15]

### 1. The Assignability of Causes of Action.

 Generally, under Texas law, causes of action are assignable. *Tate v. Goins, Underkofler, Crawford & Langdon,* 24 S.W.3d 627, 633 (Tex.App.—Dallas 2000, pet. denied) (citing to TEX. PROP. CODE § 12.014). However, this general rule does not necessarily apply to legal malpractice claims. *Id.* Assignments of legal malpractice claims necessitating a "duplicitous change in the positions taken by the parties in antecedent litigation" and those involving commercial marketing of legal malpractice claims are disfavored under Texas law. *Mallios v. Baker,* 11 S.W.3d 157, 164 (Tex.2000) (Hecht, J., concurring); *Tate,* 24 S.W.3d at 633.[16]

In addressing the propriety of assigning malpractice claims, Texas courts focus on public policy issues. *See, e.g., Tate,* 24 S.W.3d at 633–34; *Vinson & Elkins,* 946 S.W.2d at 392;[17] *Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313, 316–18 (Tex.

App.—San Antonio 1994, writ ref'd). We discuss below the relevant considerations.

### 2. Texas Public Policy Considerations Relating to Assignments.

 When examining an agreement with public policy concerns in mind, we determine whether the agreement has a tendency to "injure the public good." *Ranger Ins. Co. v. Ward,* 107 S.W.3d 820, 827 (Tex.App.—Texarkana 2003, pet. denied). No standard definition or test applies to all cases, but courts generally find that a contract injures the public good if it is illegal, or is inconsistent with or contrary to, the best interests of the public. *Id.* "A state's public policy is embodied in its constitution, statutes, and the decisions of its courts." *Id.*

 Texas law strongly favors and encourages voluntary settlement and orderly dispute resolution. *See, e.g., Schlumberger,* 959 S.W.2d at 178; *Elbaor v. Smith,* 845 S.W.2d 240, 250 (Tex.1992); *Ranger Ins. Co.,* 107 S.W.3d at 827. Indeed, " '[t]he law has always favored the resolution of controversies through compromise and settlement rather than through litigation[,] and it has always been the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy.' " *Cadle Co. v. Castle,* 913 S.W.2d 627, 638 (Tex.App.—Dallas 1995,

---

31, 1999; the Settlement Agreement was executed on April 12, 1999.

**15.** We decline to construe them as being freely assignable. They involve Sydow and Verner, Liipfert's alleged misconduct in representing them in the FCA litigation, and are, therefore, legal malpractice claims. *See Greathouse v. McConnell,* 982 S.W.2d 165, 172 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). Assignments of other claims against attorneys for misconduct in the representation of a client are not assignable. *See Vinson & Elkins v. Moran,* 946 S.W.2d 381, 396 (Tex.

App.—Houston [14th Dist.] 1997, writ dism'd by agr.). In addition, the Texas Supreme Court recently held that DTPA claims are not assignable. *PPG Indus.v. JMB/Houston Ctrs. Partners Ltd. P'ship,* 146 S.W.3d 79, 91 (Tex., 2004).

**16.** Two exceptions to this general rule exist, but neither applies here.

**17.** In *Vinson & Elkins,* this court held that *all* legal malpractice claims are not assignable. 946 S.W.2d at 394.

writ denied) (quoting *Hernandez v. Telles,* 663 S.W.2d 91, 93 (Tex.App.—El Paso 1983, no writ)). Settlement agreements are not only favored because they are beneficial in themselves, but also because they are "conducive to peace and harmony." *Id.; see also Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 428 (5th Cir.1977) (noting that settlement agreements are "highly favored in the law and will be upheld whenever possible"). This strong public policy in favor of voluntary settlements is also embodied in Texas's statutes. *See* TEX. CIV. PRAC. & REM. CODE § 154.002 (stating Texas public policy encourages the peaceable resolution of disputes and the early settlement of pending litigation through voluntary settlement).

### 3. These Assignments are Disastrous to the Public Good.

■ On their face, the assignments in this case injure the public good; one could even say that if the law countenanced them, it would be disastrous to the public good. Approximately two weeks before they executed the Settlement Agreement, Wright and Kennard secretly assigned their claims to Pat Holloway solely to circumvent the releases in the Settlement Agreement. Various provisions in the assignments proclaim this purpose:

> N. On March 31, 1999, [Sydow and Verner, Liipfert] insisted upon the addition to their proposed [Settlement Agreement] of new and expanded release language which might be construed to effectively release all claims of Wright and Kennard against [Sydow and Verner, Liipfert]. If Wright and Kennard do not sign such agreement, they will be unable to pursue their own cases *for lack of counsel, and* [Sydow and Verner, Liipfert] effectively will have destroyed the claims and cases of Wright and Kennard which [Sydow and Verner, Liipfert] had agreed to prose-

cute diligently for Wright and Kennard, but never did.

> O. To further advance their interests in their "knife fight without rules" against Wright and Kennard, [Sydow and Verner, Liipfert], clever and experienced lawyers, could have inserted in their proposed [Settlement Agreement] provisions whereby Wright and Kennard warranted and represented they were now the sole owners of all claims against [Sydow and Verner, Liipfert] being released. [Sydow and Verner, Liipfert] also could have inserted provisions whereby Wright and Kennard warranted and represented that they had made no prior assignment or encumbrance to any third party of the claims against [Sydow and Verner, Liipfert] being released by Wright and Kennard.

> P. But neither Sydow nor Verner Liipfert have demanded, or even requested or suggested, that the proposed [Settlement Agreement] contain any such protective provisions, even though such normally are included in client-releases prepared by competent and diligent lawyers. Consequently, Wright and Kennard are entitled to make the assignment herein without violating the proposed [Settlement Agreement] which soon or ultimately they may be forced by duress into signing.

> \* \* \* \*

> 2. Assignee Holloway agrees to assign the claims, ... to an attorney or law firm ... who will agree to prosecute the claims against [Sydow and Verner, Liipfert] covered hereby, to the end that the duress, malfeasance, and malpractice of [Sydow and Verner, Liipfert] shall not be rewarded. To the same end, Holloway further agrees to assist such attorneys in the prosecution of such claims without charge to Assignors or benefit to himself.

As evidenced by the plain language of the Holloway assignment, during the negotiations of the Settlement Agreement, Wright and Kennard actively sought to divest themselves of the malpractice claims, claims that were part of the bargained exchange. Upholding these assignments would undermine the strong public policy favoring voluntary settlement agreements. It would encourage parties to negotiate and execute settlement agreements in bad faith. It would incite litigation rather than settling it. It would produce disharmony and ill will rather than peace. In short, our State's public policy would be undone.

Wright and Kennard request we countenance their actions because of the alleged duress. However, we already disposed of that issue unfavorably to Wright and Kennard. They also argue that the assignments should be allowed because Pat Holloway did not personally benefit from the assignments—a meager argument in light of the havoc that could result if the law were to recognize assignments of claims made under these circumstances.

As we already have said, the legal system condones assignments. However, here, the disadvantages to the legal system outweigh the benefits to the parties. The only ones not hurt by this assignment are Wright, Kennard, and Holloway. Everyone else, including the legal system, are dealt thunderous blows. If we condoned these assignments, no agreement could ever be considered "settled." *See, e.g.,* *Zuniga,* 878 S.W.2d at 317. We decline to condone Wright's and Kennard's actions and find that, under the circumstances of this case, the assignments violate the strong public policy of this State favoring voluntary settlement agreements and are void. Because we find the assignments to Pat Holloway void, ownership of the claims remained in Wright and Kennard and thus were released by virtue of the Settlement Agreement. *See Mallios,* 11 S.W.3d at 159. We overrule this issue.

**B. The Trial Court Erred in Granting Summary Judgment on Holloway, P.C.'s Claims for Fraudulent Inducement and Negligent Misrepresentation.**

We now reach the last issue, in which Holloway, P.C. claims that the trial court erred in dismissing its fraudulent inducement and negligent misrepresentation claims. Sydow and Verner, Liipfert asserted in their summary judgment motion, filed on July 29, 2002, that the "legal malpractice lawsuit" was barred as a matter of law because Sydow and Verner, Liipfert never represented Holloway, P.C. Because Pat Holloway, P.C. was not a client, they owed it no duty. Sydow and Verner, Liipfert also claimed Holloway, P.C. was a co-counsel in the underlying litigation and could not allege that "its contingent interest in that litigation was diminished" because of Sydow and Verner, Liipfert's conduct. Relying on *Barcelo v. Elliot,* 927 S.W.2d 28 (Tex.App.—Houston [1st Dist.] 1995), *aff'd,* 923 S.W.2d 575 (Tex.1996), Sydow and Verner, Liipfert argued that, even assuming they committed malpractice, Holloway, P.C.'s claims failed for lack of privity. This argument is misplaced.

As we explain below, we conclude that the trial judge erred in granting summary judgment on these two causes of action. The summary judgment motion did not mention the fraudulent inducement claim. The only ground given for granting summary judgment on the negligent misrepresentation claim—lack of privity because Holloway, P.C. was not Sydow and Verner, Liipfert's client—is not viable in light of the Texas Supreme Court opinion, *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 791 (Tex.1999). We consider the fraudulent inducement claim first.

### 1. The Motion Did Not Address the Fraudulent Inducement Claim.

Because a summary judgment is a summary trial of a claim, our rules and law require that a party may secure a summary judgment only on those grounds specifically named and discussed in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex.1993). This is a notice requirement, intended to notify the claimant and the trial court of those claims or elements of claims the opponent is attacking. *Id.* A trial court can enter a summary judgment only against those claims attacked in a motion for summary judgment.

This summary judgment motion gave Wright, Kennard, and Holloway, P.C. no notice that the fraudulent inducement claim was being attacked because the claim was not mentioned in the motion. As a result, the trial court could not render summary judgment on it.[18] *Id.* For this reason, the trial court erred in granting summary judgment on the claim.

### 2. Summary Judgment was Wrongly Granted on the Negligent Misrepresentation Claim.

The trial court also erred in granting judgment on the negligent misrepresentation claim, but for different reasons. Sydow and Verner, Liipfert gave only two reasons why the claim should fail as a matter of law: (1) Holloway, P.C. was not their client and therefore was not in privity with it, and (2) the negligent misrepresentation claim was merely a thinly disguised legal malpractice claim. But this position is not viable in light of *McCamish.* See *McCamish,* 991 S.W.2d at 791.

*McCamish* presented the Texas Supreme Court with "one precise question":

whether a third party was precluded from suing an attorney for negligent misrepresentation under the Restatement (Second) of Torts, section 552, because of the absence of an attorney-client relationship. *Id.* The Court squarely answered that question, stating that the theory of negligent misrepresentation "permits plaintiffs who are not parties to a contract for professional services to recover from the contracting professionals." *Id.* at 792.

In addition, the Court confirmed that a negligent misrepresentation claim is not a legal malpractice claim. *Id.* at 792. Under negligent misrepresentation, liability is not based on the breach of duty owed by a professional to his client or others in privity; instead, liability is based on the "professional's manifest awareness of the non-client's reliance on the misrepresentation and the professional's intention the non-client so rely." *Id.*

The scope of the duty imposed on an attorney to a non-client is limited to those situations in which (1) the attorney is aware of the non-client and intends that the non-client rely on the representation, and (2) the non-client justifiably relies on the attorney's representation of a material fact. *Id.* at 794. For purposes of determining whether the non-client justifiably relied on the representation, a reviewing court must consider the nature of the relationship between the attorney, client, and non-client. *Id.* Generally, a non-client cannot justifiably rely on an attorney's representations when those representations occur in an adversarial context. *Id.* Also, a non-client cannot rely on an attorney's representations unless the attorney invites that reliance. *Id.* at 795. A non-client's claims for negligent misrepresentation are

---

18. In fact, even in its briefing on appeal, Sydow and Verner, Liipfert never refer to the fraudulent inducement claim and refer only to Holloway, P.C.'s "negligence and negligent misrepresentation claims."

subject then to rules regarding proof of materiality and reliance. *Id.*

Thus, after *McCamish*, a defendant's claim for negligent misrepresentation will not fail simply by showing that it did not represent the claimant or that the claimant and the attorney were not in privity; under *McCamish*, a third party non-client can bring a negligent misrepresentation claim. Post-*McCamish*, whether the plaintiff was represented by the lawyer or was not in privity with the lawyer, although not necessarily irrelevant issues, are not the focus of the inquiry. *Id.*

 In this case, though, the focus of the argument was on these non-controlling issues—the claimant's status as a client and privity. Just as in *McCamish*, this trial court granted summary judgment on Holloway, P.C.'s claims because Holloway, P.C. was not in privity with Sydow and Verner, Liipfert and, according to the judgment, they "otherwise owed no duty of care" to Holloway, P.C. *See id.* Through *McCamish* we know that the lack-of-privity argument, if given as the only reason for denial of a claim, is incorrect and unsupportable. *See id.*

In addition, the trial court's decision that this record proved that Sydow and Verner, Liipfert owed no duty to Holloway, P.C. on the negligent misrepresentation claim is incorrect. First, the only reason Sydow and Verner, Liipfert presented for not owing Holloway, P.C. a duty was that they were not in privity; we already have held that position untenable if that is the sole reason given for the claim's failure. Second, if, by chance, the trial court granted the motion because it concluded for some other reason that no duty was owed, it could have done so only on the basis of evidence or some other argument that addressed the elements of a negligent misrepresentation claim. But, Sydow and Verner, Liipfert presented no evidence to

defeat an element of a negligent misrepresentation claim and gave no other reasons for the claim's failure. In short, the trial court had nothing before it to support a conclusion that no duty was owed.

For all of these reasons, the trial court erred in granting summary judgment as to the negligent misrepresentation and the fraudulent inducement claims, and we sustain Wright, Kennard, and Holloway, P.C.'s fifth issue.

## VII. CONCLUSION.

In conclusion, we overrule the following issues:

- the first issue related to the fraud and duress claims;
- the second issue related to the post-settlement agreement claims;
- the third issue related to the alleged violation of the disciplinary code;
- the fourth issue related to the claims assigned to Holloway prior to the execution of the Settlement Agreement; and
- the sixth issue related to the denial of the motion for continuance.

We sustain the following issue:

- Holloway P.C.'s fifth issue, in which it asserts that the trial court wrongly granted summary judgment on its fraudulent inducement and negligent misrepresentation claims.

We therefore affirm all portions of the judgment except for numbered paragraph 2e in which the trial court held that "[t]he claims of Pat S. Holloway, P.C. are invalid as a matter of law because Defendants were not in privity with Pat S. Holloway, P.C. and otherwise owed no duty of care to Pat S. Holloway, P.C.," and we remand

only that portion of the case to the trial court for further proceedings.