Affirmed in Part and Reversed and Remanded in Part and Opinion filed
November 24, 2004









 

Affirmed in Part and Reversed and Remanded in Part and
Opinion filed November 24, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00222-CV

____________

 

HARROLD E. (“GENE”)
WRIGHT, DON KENNARD, PAT S. HOLLOWAY, and 

PAT
S. HOLLOWAY,
P.C., Appellants

 

V.

 

MICHAEL SYDOW and
VERNER, LIIPFERT, BERNHARD MCPHERSON 

&
HAND, CHARTERED, Appellees

 



 

On Appeal from the 129th
District Court

Harris County, Texas

Trial Court Cause No. 02-00063

 



 

O P I N I O N

I.      Introduction.








Harrold Wright and Don Kennard hired Michael Sydow and
Verner, Liipfert, Bernhard Mcpherson & Hand, Chartered to represent them in
qui tam[1]
litigation.  Wright and Kennard
anticipated reaping a great deal of money from the suits and Sydow and Verner,
Liipfert were given an interest in any proceeds they obtained.  But, less than a year after their
relationship began, it soured, leaving Wright and Kennard crying foul and
attempting to avoid the preclusive effects of a settlement agreement by
secretly assigning causes of action days before they executed the
agreement.  Wright and Kennard filed this
suit several years later.

Wright and Kennard, along with Pat Holloway, a lawyer and
friend of the two, and Pat Holloway, P.C., appeal a summary judgment entered
against them in their suit against Sydow and Verner, Liipfert.  Wright, Kennard, Holloway and Holloway, P.C.
bring six issues on appeal.  We have
divided the issues into three groups: 

(1)  Wright’s and
Kennard’s substantive claims related to the Settlement Agreement covering the qui
tam litigation.  These claims
include three issues relating to alleged fraudulent acts that Wright and
Kennard released in a settlement agreement with Sydow and Verner,
Liipfert.  In these issues, they attempt
to avoid the release by claiming (a) fraud and duress, (b) that some acts
occurred after the settlement agreement, and (c) violations of the Texas
Lawyers’ Disciplinary Code.

(2)  Wright’s and
Kennard’s procedural issue involving the trial court’s denial of their motion
for continuance.  In this issue,
Wright and Kennard complain that the trial court wrongly denied their motion
for continuance of the summary judgment hearing.

(3)  Pat
Holloway’s and Pat Holloway, P.C.’s claims. 
Pat Holloway and Pat Holloway, P.C. raise two issues. In the first, they
claim that the trial court wrongly refused to allow Pat Holloway to recover on
claims Wright and Kennard assigned to him days before the Settlement Agreement
was executed.  In the second, they
complain that the court should not have dismissed Pat Holloway, P.C.’s claims
for fraudulent inducement and negligent misrepresentation.








We overrule all of the issues except the issue pertaining to
Pat Holloway, P.C.’s claims.  Wright’s
and Kennard’s substantive attacks on the Settlement Agreement fail because they
released the claims, and their attempts to circumvent the release fail.  The procedural issue fails because the trial
court did not abuse its discretion in denying their motion for continuance, as
they requested it only to gather more evidence for their fatally flawed duress
and fraud claims.  Holloway’s claim fails
because it involved an assignment of a malpractice claim made soley to avoid
the preclusive effect of a Settlement Agreement.  Finally, Pat Holloway, P.C.’s claim is
reversed and remanded because Sydow and Verner, Liipfert failed to address that
claim in their summary judgment motion.

II.       Facts
and Procedural Background.

A.        The Factual Background. 

This suit arose after Sydow and Verner, Liipfert represented Wright and Kennard from
December 1997 to October 1998 in False Claims Act (“FCA”) litigation.  Under the FCA, individual citizens may bring
a qui tam action, as relators, in the name of the government seeking
damages for fraud committed against the government.  See 31 U.S.C. §§ 3729–3733
(1994).  In exchange for these efforts, a
relator receives a portion of the recovery in the suit—up to thirty percent of
the proceeds of the action—plus reasonable expenses, costs, and attorney’s
fees.  Id. § 3730(d).  According to Wright, Kennard, Holloway, and
Holloway, P.C., FCA litigation is unique because it “creates an entrepreneurial
atmosphere . . . . it is a joint venture between the relator and his attorneys
to collect money for a third-party.”








Wright filed suit under the FCA against a large number of oil
and gas companies alleging underpayment of royalties due the federal government
on oil, gas, and natural gas liquids produced from federal onshore, Indian, and
outer-continental-shelf lands (the “original FCA lawsuit”).  He needed competent counsel to represent him
in this and other complex litigation. 
After meetings among Sydow and Verner, Liipfert, and Wright, and Kennard, everyone agreed
Sydow
and Verner, Liipfert
would represent Wright and Kennard as lead counsel.[2]  

The relationship soured rather quickly.  Among other complaints, Wright and Kennard
believed that Sydow and Verner, Liipfert had misrepresented

(a) their experience in the types of
suits in which Wright and Kennard were involved,

(b) their intent to diligently represent Wright and Kennard,
and

(c) their lack of conflicts with the litigation.  

Less than a year after Wright hired them, he informed Sydow and Verner,
Liipfert they were being
discharged as his attorneys.  He claimed
the discharge was for cause for numerous reasons.  Sydow and Verner, Liipfert responded with a letter disputing
Wright’s claims and informing Wright that Sydow and Verner, Liipfert retained “all of [their] rights
under the respective retention agreements and applicable law.”

Following this, in October of 1998, Sydow and Verner,
Liipfert filed motions
to withdraw as counsel for Wright and Kennard and motions to intervene in the
three pending lawsuits.[3]  Sydow and Verner, Liipfert attached to each motion a copy of
Wright’s discharge letter.  Sydow and Verner,
Liipfert sought to
withdraw as attorneys for both Wright and Kennard, although Wright did not
mention Kennard in the discharge letter.

United States District Judge John Hannah, Jr., the presiding
judge over the three lawsuits, ruled on Sydow and Verner, Liipfert’s motions in November of 1998,
finding that








(1) 
on October 21, 1998, Wright, acting for himself and on behalf of
Kennard, notified Sydow and Verner, Liipfert that they had been discharged in
all pending FCA litigation;

(2) 
Sydow and Verner, Liipfert disputed they were discharged for cause; and

(3) unless he allowed the attorneys
to intervene, their ability to protect their interest in the litigation would
be impaired.

The court granted Sydow and Verner, Liipfert’s request to
withdraw as counsel for Wright and Kennard and also allowed them to intervene
in the pending FCA actions.  In early
December of 1998, Wright, Kennard and Holloway received copies of Judge
Hannah’s orders. 

Several months later, in April of 1999, the parties executed
a Settlement Agreement releasing and discharging one another “from any and all
claims, demands and causes of actions, including, but not limited to, those in
contract, warranty or tort, of negligence or gross negligence, of quantum
meruit, under common law or statute, based upon any acts and/or omissions” of
the parties.[4]


B.        The Procedural Background of this
Suit.








More than a year after executing the Settlement Agreement,
Wright and Kennard sued Sydow and Verner, Liipfert, asserting legal malpractice, fraud, negligent
misrepresentation, negligence, breach of contract, breach of fiduciary duty,
conversion, negligent supervision, fraudulent inducement, and Texas Deceptive
Trade Practices Act (“DTPA”) violations. 
Wright and Kennard alleged that their legal malpractice claims were
continuing because Sydow and Verner, Liipfert continued to use confidential information acquired
when they represented Wright and Kennard. 
Later, in Wright’s and Kennard’s Second Amended Petition, Holloway, P.C.
was listed as a plaintiff, asserting a claim for fraudulent inducement.  The petition also stated that the action was
being brought in part by Pat Holloway, individually, as an assignee of Wright’s
and Kennard’s claims.

Sydow and Verner, Liipfert filed a motion for summary
judgment arguing that (1) Wright’s and Kennard’s claims had been settled and
released by the Settlement Agreement; (2) Wright and Kennard could not assign
their legal malpractice claims to Pat Holloway under Texas law and, (3)
Holloway, P.C.’s claims failed because Holloway, P.C. was never represented by Sydow or Verner,
Liipfert and Texas law
forbids non-clients from suing for legal malpractice.

The trial court granted summary judgment in favor of Sydow and Verner,
Liipfert, holding in
part that 

·                     
all claims
asserted by Wright and Kennard had been released by the Settlement Agreement;

·                     
no genuine issue
of fact existed regarding the alleged fraud and/or duress;

·                     
the purported
assignments of claims and causes of action to Pat Holloway individually were
void and unenforceable under Texas law;

·                     
the claims of
Holloway, P.C. were invalid because there was no privity between Holloway, P.C.
and Sydow and Verner,
Liipfert; and 

·                     
Wright’s and
Kennard’s Motion for Continuance was denied. 


This appeal ensued.  

III.      The
Standard of Review.








The standard of review for five of the six issues is the
well-established standard applied to summary judgments.  The movant for summary judgment has the
burden of showing that there are no genuine issues of material fact and that it
is entitled to judgment as a matter of law. 
KPMG Peat Marwick v. Harrison County Housing Fin. Corp., 988
S.W.3d 746, 748 (Tex. 1999).  In deciding
whether there is a material disputed fact issue precluding summary judgment,
evidence favorable to the non‑movant will be taken as true.  Id. 
Every reasonable inference must be indulged in favor of the non‑movant
and any doubts resolved in its favor.  Id.

A defendant, as movant, is entitled to summary judgment if it
(1) disproves at least one element of each of the plaintiff’s theories of
recovery, or (2) pleads and conclusively establishes each essential element of
an affirmative defense, rebutting the plaintiff’s cause of action.  Burroughs v. APS Int’l, Ltd., 93
S.W.3d 155, 159 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).      

IV.      Wright’s and Kennard’s Substantive Claims
Related to the Settlement Agreement.    

We now turn to Wright’s and Kennard’s
substantive issues related to the Settlement Agreement.  First, they claim the trial court erred in
dismissing their claims because the Settlement Agreement was procured by duress
and fraud, and therefore was not enforceable. 
They then claim the court should not have dismissed some of their fraud
claims because the claims arose after the effective date of the Settlement
Agreement.  Finally, relying on Texas
Disciplinary Rule 1.08, they argue the court should not have dismissed
Kennard’s claims because Sydow and Verner, Liipfert violated the rule when they entered
into the Settlement Agreement with Kennard, who claims he had no counsel at the
time.  We address each issue in turn.

A.        The Settlement Agreement is
Enforceable; It was Not Procured Through Duress or Fraud.

Sydow and Verner, Liipfert moved for summary judgment arguing,
in part, that Wright and Kennard settled and released their claims by executing
the Settlement Agreement.








A release that is valid on its face is a complete bar to any
action based on matters covered in the release.  McMahan v. Greenwood, 108 S.W.3d 467, 478
(Tex. App.—Houston [14th Dist.] 2003, pet. denied).  Only when it is set aside does the release
become ineffective.  Id.  In a summary judgment context, once a release
is properly pleaded, the burden shifts to the other party to offer proof that the
release should be set aside.  Id.  Therefore, once Sydow and Verner,
Liipfert  pleaded and proved the Settlement Agreement,
Wright and Kennard had the burden to present evidence raising a fact issue as
to duress and fraud.  Wright and Kennard
presented evidence they believed showed the Settlement Agreement was
unenforceable because it had been procured through duress and fraud.  In its final judgment, the trial court found
that “[a]ll claims of Wright and Kennard asserted in this lawsuit were
released by those parties’ execution of the Settlement Agreement.”

We review the evidence below, and, as we explain, we agree
with the trial court that the facts of this case reveal no duress or fraud. 

1.         Duress.

a.         Wright’s and
Kennard’s Claims.

Wright and Kennard argue that they executed the Settlement
Agreement under economic duress.  They
claim Sydow
and Verner, Liipfert
created the duress by intervening in the FCA suits and claiming—in “bad
faith”—an interest in Wright’s and Kennard’s potential recoveries in the FCA
litigation.  According to Wright and
Kennard, the interventions jeopardized Wright’s and Kennard’s ability to
continue with the pending suits because they were unable to find lawyers
willing to prosecute the inherently expensive and risky FCA litigation while Sydow and Verner,
Liipfert asserted an
interest in the proceeds.[5]








Wright and Kennard contend that Sydow and Verner, Liipfert
asserted the claims to coerce a settlement and gain proceeds they knew were not
theirs.[6]  According to Wright and Kennard, Sydow and Verner,
Liipfert knew their
intervention was wrongful, so they cannot assert they had a “legal right” to
intervene.  And, Wright and Kennard
claim, Sydow
and Verner, Liipfert
confirmed their bad intent by filing the intervention and motion to withdraw
and fraudulently representing they had sent notice of the intervention to all
attorneys of record when they had not.

b.       The Law Governing Economic Duress.

Generally, when one coerces another
to execute a contact by taking undue or unjust advantage of the person’s
economic necessity or distress, the contract may be invalid or
unenforceable.  Brown v. Cain Chem.,
Inc., 837 S.W.2d 239, 244 (Tex. App.—Houston [1st Dist.] 1992, writ
denied).  This legal theory is called
economic duress.  It requires both the
acts or conduct of the opposing party and the necessities of the alleged victim
or his fear of what a third person might do. 
Id.  The victim’s plight
alone will not suffice; it must be coupled with the bad acts of the
transgressor.  Id.  What constitutes duress is a question of law
for the court.  Windham v. Alexander,
Weston & Poehner, P.C., 887 S.W.2d 182, 185 (Tex. App.—Texarkana 1994,
writ denied); Matthews v. Matthews, 725 S.W.2d 275, 278 (Tex.
App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.).  However, whether duress exists in a
particular situation is generally a fact question dependent upon all the
circumstances surrounding the situation, including the mental effect on the
party claiming duress.  Windham,
887 S.W.2d at 185; Matthews, 725 S.W.2d at 278.








Economic duress consists of (1) a threat to do something a
party has no legal right to do, (2) an illegal exaction or some fraud or
deception, and (3) an imminent restraint that destroys the victim’s free agency
and leaves him without a present means of protection.  Dale v. Simon, 267 S.W. 467, 470 (Tex.
Comm’n App. 1924); King v. Bishop, 879 S.W.2d 222, 223 (Tex.
App.—Houston [14th Dist.] 1994, no writ); Brown, 837 S.W.2d at 244.  Wright and Kennard had the burden to raise a
fact issue as to each of these elements. 
See McMahan, 108 S.W.3d at 478; Brown, 837 S.W.2d at 242.

Finally, one additional rule is relevant and important.  When a party making a demand has to resort to
the courts to enforce the demand, no duress occurs—even if the demand is
wrongful or unlawful—because the courts provide the victim with adequate
protection.  Dale, 267 S.W. at
470; see also Cont’l Cas. Co. v. Huizar, 740 S.W.2d 429, 430 (Tex. 1987)
(Under Texas law, “[a] threat to institute a civil suit or even the actual
institution of suit does not, as a matter of law, constitute duress.”); Ward
v. Scarborough, 236 S.W. 434, 437 (Tex. Comm’n App. 1922) (“The courts have
drawn a distinction between the cases where, although the claim asserted . . .
is wrongful or unlawful, the party asserting the claim . . . is compelled to
resort to the courts to enforce [it], and the cases where the party making
[the] demand possesses . . . the power to enforce the demand . . . without
resort to the courts.  In the former case
it is held . . . with uniformity . . . that there is no duress.”).

In addition, both state and federal courts have ample tools
to punish those who bring a suit in bad faith.  See Tex.
R. Civ. P. 13; Fed. R. Civ. P. 11.  For this reason, questions of bad faith in a
suit must be resolved in the court where the action is pending.  See Griffith v. Geffen & Jacobsen,
P.C., 693 S.W.2d 724, 728 (Tex. App.—Dallas 1985, no writ).

c.       The
Alleged Bad Faith Actions Involve Filing Law Suits.    

We turn now to Wright’s and Kennard’s summary judgment
evidence, which they contend raises a fact issue regarding Sydow and Verner,
Liipfert’s “legal right”
to intervene.  They claim that Sydow and Verner,
Liipfert’s intervention
was wrongful and in “bad faith” because Sydow and Verner, Liipfert knew their claim to any recoveries
in the qui tam litigation was baseless.  
Even if we assume Wright’s and Kennard’s evidence is true, and that Sydow and Verner,
Liipfert pursued its
claims in bad faith, Wright’s and Kennard’s claims fail.








Sydow and Verner, Liipfert entered into contingent fee
contracts with Wright and Kennard concerning the underlying FCA litigation, and
intervened in the FCA litigation to protect any fees they may have been
entitled to receive under the representation agreements.  Sydow and Verner, Liipfert openly contested that their
discharge was with cause.  Under Texas
law, because they resorted to the courts to pursue whatever rights they may
have had under the contingent fee contracts and to dispute the discharges for
cause, no economic duress can occur. 

Wright and Kennard attempt to engraft on economic duress a
requirement that the claim must be brought in good faith.  However, as we have discussed, the Texas
Supreme Court has held since the late nineteenth century that no compulsion
occurs when one party sues, even if the suit is brought in bad faith.  See Taylor v. Hall, 71 Tex. 213, 9
S.W. 141, 142–43 (1888). 

A corollary to this rule is that disputes must be settled in
the case in which and the court before which they arise.  The courts have been given broad powers to
punish those abusing the court system and provide litigants sufficient
protection.  See Tex. R. Civ. P. 13. Subsequent or
satellite litigation—as Wright and Kennard have initiated here—on issues
relating to a suit is not a proper remedy and is an inefficient and improper
use of the court system.  See Trevino
v. Ortega, 969 S.W.2d 950, 953 (Tex. 1998); McMahan, 108 S.W.3d at
482; Detenbeck v. Koester, 886 S.W.2d 477, 481 (Tex. App.—Houston [1st
Dist.]1999, no writ). 








Sydow and Verner, Liipfert intervened through the court,
pursuing whatever rights they may have had under their fee agreements, and
Wright and Kennard could have availed themselves of the protections of the
court.  Had the intervention been
wrongful, Wright and Kennard could have tried the issue in the federal court
before the entry of  Judge Hannah’s
order, or following their receipt of the order, but they chose not to.  See Fed.
R. Civ. P. 60(b) (stating a party may file a motion to be relieved of a
judgment or order issued through mistake, neglect or fraud, among other
reasons, within a year of the date the order was issued).[7]


In sum, we find Wright and Kennard failed to establish that
the Settlement Agreement was signed under duress.

2.       Fraud.

Wright and Kennard also claim the
Settlement Agreement is unenforceable because it was procured through these
illegal acts: 

(1) fraud committed to convince Wright and Kennard to hire
Sydow and Verner, Liipfert; 

(2) fraud committed when Sydow and Verner, Liipfert
illegally claimed ownership in possible recoveries of Wright and Kennard in the
FCA litigation; and 

(3) fraud occurring when Sydow and Verner, Liipfert did not
notify Wright and Kennard that they had intervened in the lawsuit pending in
Judge Hannah’s court.[8]









a.       The Law Regarding Fraud.

Under Texas law a
person has a duty to abstain from fraudulently inducing another to enter into a
contract.  See McMahan, 108 S.W.3d
at 479 (citing Haase v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001)).  When one individual fraudulently induces
another to enter into a contract, no contract results because the one who was
fraudulently induced gave no real consent to the agreement.  See Schlumberger Tech. Corp. v. Swanson,
959 S.W.2d 171, 178 (Tex. 1997).  A
settlement agreement or release is a contract and, like other contracts, may be
avoided if it was procured through fraud. 
Id.  

Fraud requires a material false
representation that the speaker knew was false or that was made recklessly
without any knowledge of the truth and as a positive assertion.  Johnson & Higgins of Tex., Inc. v.
Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998).  The speaker must intend that the other party
act upon the statement.  Id.  The party must act in reliance upon the
representation and suffer injury. Id.; McMahan, 108 S.W.3d at
479.  In addition, implicitly, the rule
requires that the victim not know that the statement is false.  McMahon, 108 S.W.3d at 479-81 (finding
that knowledge of the alleged fraud defeated a claim that a settlement
agreement was procured through fraud).  This
last, implicit requirement, prevents Wright and Kennard from establishing the
necessary elements of their fraud claim.

b.       Wright and Kennard Knew of the Alleged
Acts Before Signing the Settlement Agreement.

Wright and Kennard cannot establish their
fraud claim because they knew about the alleged fraudulent acts before they
executed the Settlement Agreement.  The
language contained in their assignment to Holloway, signed before the
Settlement Agreement, describes the very acts of which they now complain.  The assignment stated that

·                     
Sydow
and Verner, Liipfert had “lied and misrepresented facts” to Wright, Kennard,
and Judge Hannah;

·                     
the
intervention was frivolous; and 








·                     
Wright
and Kennard executed the assignment because of the coercion and duress exerted
by Sydow and Verner, Liipfert. 

By the express language of the Settlement
Agreement, Wright and Kennard released any and all claims against Sydow and
Verner, Liipfert which occurred as of the execution date, April 12, 1999,
whether known or not, including claims surrounding Sydow and Verner, Liipfert’s
representation of them in the FCA litigation, as well as their intervention in
those suits.  The Settlement Agreement
also contains a merger clause, stating that “all promises, negotiations, or
representations not expressly set forth in this Agreement are of no force and
effect.”  

In summary, because Wright and Kennard
failed to establish their claims of fraud and duress, the trial court properly
granted summary judgment based upon the Settlement Agreement and their first
issue is overruled. 

B.      The Trial
Court Did Not Err in Dismissing Wright’s and Kennard’s Post-Settlement
Agreement Claims.

In their second
issue, Wright and Kennard argue the trial court erred in granting summary
judgment on their post-Settlement Agreement claims.  Wright and Kennard claimed Sydow and Verner,
Liipfert used confidential information of Wright and Kennard in representing an
Indian tribe.  However, as with the fraud
claims, Wright and Kennard knew of the representation when they executed the
Settlement Agreement and thus released these claims.[9]   Again, their knowledge is evidenced by
language contained in the assignment to Pat Holloway:








D.      In
addition, [Sydow and Verner, Liipfert’s] Settlement Agreement misappropriated
confidential and proprietary information obtained by them in the course of
their representation of Wright and Kennard, and used it for their own purposes
to obtain separate and conflicting representation of the Alabama and Coushatta
Indian Tribes of Texas [].  

E. . . . In violation of their
duties of undivided loyalty to Wright and Kennard, [Sydow and Verner, Liipfert]
agreed to represent the Tribe[s] in separate litigation by it.  They filed a lawsuit for the Tribe[s] which
competed directly with one lawsuit they already had filed for Wright; and with
another lawsuit they had agreed to file for Wright and Kennard.  The lawsuit [Sydow and Verner, Liipfert
filed] on behalf of the Tribe[s] was based entirely on confidential and
proprietary information of Wright and Kennard which [Sydow and Verner,
Liipfert] had obtained in the course of their representation of Wright and
Kennard.  

Clearly, Wright and Kennard knew of these
post-Settlement Agreement claims, and they do not argue that different conduct
by Sydow and Verner, Liipfert or different harm gave rise to their
post-Settlement Agreement claims. 
Instead, in a unique twist, they argue that Sydow and Verner, Liipfert’s
continued use of the confidential information represents a continuing breach of
the duty it owed to them as clients; as a continuing breach, these claims
survive the execution of the Settlement Agreement.  We think not.

Under the legal injury rule, a tort cause
of action accrues when the tort is completed— when the act is committed and
damages are suffered.  Goggin v.
Grimes, 969 S.W.2d 135, 137 (Tex. App.—Houston [14th Dist.] 1998, no
pet.).  Wright and Kennard complain that
Sydow and Verner, Liipfert used Wright’s and Kennard’s confidential information
to represent the Tribes.  Under this
scenario, the injury-producing event occurred when Sydow and Verner, Liipfert
undertook representation on behalf of the Tribes.  Wright and Kennard knew of this conduct
before signing the Settlement Agreement. 
Yet, they released Sydow and Verner, Liipfert from any claims or causes
of action in connection with the FCA litigation.  See Keck, Mahin & Cate v. Nat’l Union
Fire Ins. Co., 20 S.W.3d 692, 698 (Tex. 2000).  They have failed to establish that their
post-Settlement Agreement claims survived execution of the Settlement
Agreement.  The trial court properly
granted summary judgment on these claims, and we overrule their second issue. 








C.      The
Trial Court Did Not Err in Dismissing Kennard’s Claims that the Firm Violated
Texas Disciplinary Rule 1.08.  

In their third issue, Wright and Kennard
argue that the trial court erred in dismissing Kennard’s claims, alleging that
Sydow and Verner, Liipfert violated Texas Disciplinary Rule 1.08(g) when they
entered into the Settlement Agreement with Kennard because Kennard claimed in a
summary judgment affidavit that he was not represented by counsel.  

Disciplinary
Rule 1.08(g) provides the following:

A lawyer shall not make an
agreement prospectively limiting the lawyer’s liability to a client for
malpractice unless permitted by law and the client is independently represented
in making the agreement, or settle a claim for such liability with an
unrepresented client or former client without first advising that person in
writing that independent representation is appropriate in connection therewith.

Tex. Disciplinary R. Prof’l
Conduct 1.08(g),
reprinted in Tex. Gov’t Code,
tit. 2, subtit. G app. A.  

Relying on Quintero v. Jim Walter
Homes, Inc., 709 S.W.2d 225 (Tex. App.—Corpus Christi 1986, writ ref’d
n.r.e.), Wright and Kennard argue that a release made in contravention of the
Disciplinary Rules is invalid and unenforceable. 

1.         Contracts between
attorneys and their clients are closely scrutinized and presumed invalid; when
the attorney-client relationship is severed, the presumption ends.

Generally, courts closely scrutinize
contracts between attorneys and their clients negotiated during the existence
of the attorney-client relationship.  Keck,
20 S.W.3d at 699.  They do this because
the relationship is fiduciary in nature and, therefore, courts presume those
contracts are unfair or invalid.  Id.  If the attorney-client relationship has been
severed before the parties enter into an agreement, the presumption does not
apply.  Id. at 699 n.3.








Months before the Settlement Agreement was
executed, the federal district court severed the attorney-client relationship
between Kennard and Sydow and Verner, Liipfert. 
Kennard knew this at least by December 1998, about five months before he
executed the Settlement Agreement.[10]  Indeed, the Settlement Agreement states,
“[a]lthough Kennard alleges that he has not yet terminated [Sydow and Verner,
Liipfert] . . . , the Court found by its Order dated November 9, 1998 that
Wright has terminated [Sydow and Verner, Liipfert] on behalf of Kennard.”  Therefore, although appellants argue that the
Disciplinary Rules provide the standard of care governing execution of the
Settlement Agreement, the attorney-client relationship between Kennard and
Sydow and Verner, Liipfert had ended five months before its execution.  Because the fiduciary nature of the relationship
ended before Kennard signed the Settlement Agreement, the presumption of
invalidity no longer accompanies it.  For
this reason, we examine it in light of general contract principles.[11]  See id.

2.       A
review of the facts of this case based on general contract principles reveals
no prejudice to Kennard.    








Here, the evidence indicates the parties
negotiated and executed the Settlement Agreement in an arm’s length
transaction.  First, Keith Spickelmier,
the attorney representing Sydow and Verner, Liipfert in the Settlement
Agreement matter, stated by affidavit that all negotiations regarding the
agreement were conducted through attorneys for each of the parties and that
Wright’s attorney—not Sydow or Verner, Liipfert—drafted the original
agreement.  Second, Wright and Kennard
furnished affidavits attesting to their business acumen and, specifically,
Kennard’s affidavit states he was a Texas state legislator for twenty years,
concentrating much of his career “in pursuit of the public interest as it
relates to the oil and gas industry.” 
Kennard was a sophisticated party in the transaction.[12]  Third, the terms of the Settlement Agreement
were favorable to Kennard because, unlike Wright, the Settlement Agreement did
not require him to pay anything to Sydow and Verner, Liipfert.  See, e.g., Schlumberger, 959
S.W.2d at 179 (construing a release under contract interpretation rules,
upholding release and noting various factors established it was an arm’s length
transaction). 

In addition, even assuming Kennard was not
represented and that Sydow and Verner, Liipfert did not inform him that he
should acquire independent representation, this would merely establish a
violation of the Disciplinary Rules.  A
violation of the Disciplinary Rules does not necessarily establish a cause of
action, nor does it void an otherwise valid contract executed outside of the
attorney-client relationship.  See  Tex.
Disciplinary R. Prof’l Conduct preamble ¶ 15; Cuyler v. Minns, 60
S.W.3d 209, 214 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  And Kennard has not cited us any case with
these or any facts in which a court has held that a cause of action exists
based on this disciplinary rule.








We have already held that the Settlement
Agreement is not voidable due to any alleged duress or fraud.  We decline to use Disciplinary Rule 1.08 to
void an otherwise valid settlement agreement entered into at arm’s length and
by which Kennard obtained favorable results. 
Cf. Lawrence v. CDB Servs., Inc., 44 S.W.3d 544, 553 (Tex. 2001)
(noting that courts should exercise judicial restraint in deciding to hold an
arm’s length transaction void on public policy grounds).  We overrule Kennard’s third issue. 

V.      Wright’s and Kennard’s Procedural Issue.

A.      The
Trial Court Did Not Err in Denying the Motion for Continuance.

In their procedural issue, Wright and
Kennard claim the trial court erred in denying their motion for continuance
under Rule 166a(g).  See Tex. R. Civ. P. 166a(g).[13]

1.       The Standard of Review.

A request for a continuance is within the
trial court's discretion, and we will not disturb the trial court’s ruling
unless the trial court abused its discretion, or in other vernacular, unless
the trial court acted arbitrarily and unreasonably.  Karen Corp. v. Burlington N. & Santa
Fe Ry. Co., 107 S.W.3d 118, 124 (Tex. App.—Fort Worth 2003, pet.
denied).  When a party receives notice of
a summary judgment hearing and the notice gives more than the twenty‑one
days required by the rules of civil procedure, denial of a motion for
continuance based on lack of time to prepare generally is not an abuse of
discretion.  Id.; Sullivan v.
Bickel & Brewer, 943 S.W.2d 477, 485 (Tex. App.—Dallas 1995, writ
denied).  Courts may presume that a
plaintiff has sufficiently investigated his own case prior to filing it.  Laughlin v. Bergman, 962 S.W.2d 64, 66
(Tex. App.—Houston [1st Dist.] 1997, pet. denied).    

 

 








2.       The Trial Court Did Not Abuse its
Discretion.

According to Wright and Kennard, if the
trial court had granted them extra time, they could have shown that Sydow and
Verner, Liipfert had no legal right to assert a continuing interest in the
underlying lawsuits.  They also argue
that additional discovery was necessary to develop their allegations of fraud
and duress.  However, we already have
held that the foundations for their fraud and duress claims were infirm.  No matter how much additional discovery they
procured to show that Sydow and Verner, Liipfert had intervened in bad faith or
that Sydow and Verner, Liipfert were using confidential information, Wright and
Kennard still could not prevail.  

For this reason, we hold that the trial
court did not abuse its discretion in refusing to grant a continuance to allow
Wright and Kennard more time for discovery. 
See, e.g., Karen Corp., 107 S.W.3d at 124 (affirming
denial of motion for continuance because issue had been established as a matter
of law and further discovery was therefore unnecessary).  We overrule Wright’s and Kennard’s procedural
issue. 

VI.      The Issues Related to Holloway and to
Holloway, P.C.

A.      The
Trial Court Did Not Err in Dismissing Wright’s and Kennard’s Claims Assigned to
Holloway Individually Because the Assignment Violates Public Policy.








Wright, Kennard and Holloway contend that
the trial court erred in dismissing the claims assigned to Holloway
individually because they were assigned before Wright and Kennard executed the
Settlement Agreement.[14]  Consequently, Wright and Kennard argue that
the claims were not released by the Settlement Agreement and that Holloway may
prosecute them.  In addition, they argue
that their other claims against Sydow and Verner, Liipfert, such as their
claims for fraud, breach of contract, misrepresentation, and violations of the
Deceptive Trade Practices Act, are freely assignable.[15]  

1.       The Assignability of Causes of Action.

Generally, under Texas law, causes of
action are assignable.  Tate v. Goins,
Underkofler, Crawford & Langdon, 24 S.W.3d 627, 633 (Tex. App.—Dallas
2000, pet. denied) (citing to Tex. Prop.
Code § 12.014).  However, this
general rule does not necessarily apply to legal malpractice claims.  Id. 
Assignments of legal malpractice claims necessitating a “duplicitous
change in the positions taken by the parties in antecedent litigation” and
those involving commercial marketing of legal malpractice claims are disfavored
under Texas law.  Mallios v. Baker,
11 S.W.3d 157, 164 (Tex. 2000) (Hecht, J., concurring); Tate, 24 S.W.3d
at 633.[16]

In addressing the propriety of assigning
malpractice claims, Texas courts focus on public policy issues.  See, e.g., Tate, 24 S.W.3d at
633–34; Vinson & Elkins, 946 S.W.2d at 392;[17]
Zuniga v. Groce, Locke & Hebdon, 878 S.W.2d 313, 316–18 (Tex.
App.—San Antonio 1994, writ ref’d).  We
discuss below the relevant considerations.

 

 








2.       Texas
Public Policy Considerations Relating to Assignments.

When examining an agreement with public
policy concerns in mind, we determine whether the agreement has a tendency to
“injure the public good.”  Ranger Ins.
Co. v. Ward, 107 S.W.3d 820, 827 (Tex. App.—Texarkana 2003, pet.
denied).   No standard definition or test
applies to all cases, but courts generally find that a contract injures the
public good if it is illegal, or is inconsistent with or contrary to, the best
interests of the public.  Id.  “A state’s public policy is embodied in
its constitution, statutes, and the decisions of its courts.”  Id.

Texas law strongly favors and encourages
voluntary settlement and orderly dispute resolution.  See, e.g., Schlumberger, 959
S.W.2d at 178;  Elbaor v. Smith,
845 S.W.2d 240, 250 (Tex. 1992); Ranger Ins. Co., 107 S.W.3d at
827.  Indeed, “‘[t]he law has always
favored the resolution of controversies through compromise and settlement
rather than through litigation[,] and it has always been the policy of the law
to uphold and enforce such contracts if they are fairly made and are not in
contravention of some law or public policy.’”  Cadle Co. v. Castle, 913 S.W.2d
627, 638 (Tex. App.—Dallas 1995, writ denied) (quoting Hernandez v. Telles,
663 S.W.2d 91, 93 (Tex. App.—El Paso 1983, no writ)).  Settlement agreements are not only favored
because they are beneficial in themselves, but also because they are “conducive
to peace and harmony.”  Id.; see
also Miller v. Republic Nat’l Life Ins. Co., 559 F.2d 426, 428 (5th Cir.
1977) (noting that settlement agreements are “highly favored in the law and
will be upheld whenever possible”).  This
strong public policy in favor of voluntary settlements is also embodied in
Texas’s statutes. See
Tex.
Civ. Prac. & Rem. Code § 154.002 (stating Texas public policy encourages the peaceable
resolution of disputes and the early settlement of pending litigation through
voluntary settlement).

3.       These Assignments are Disastrous to
the Public Good.








On their face, the assignments in this
case injure the public good; one could even say that if the law countenanced
them, it would be disastrous to the public good.  Approximately two weeks before they executed
the Settlement Agreement, Wright and Kennard secretly assigned  their claims to Pat Holloway solely to
circumvent the releases in the Settlement Agreement.  Various provisions in the assignments
proclaim this purpose: 

N.     On March 31, 1999, [Sydow and Verner,
Liipfert] insisted upon the addition to their proposed [Settlement Agreement]
of new and expanded release language which might be construed to effectively
release all claims of Wright and Kennard against [Sydow and Verner,
Liipfert].  If Wright and Kennard do not
sign such agreement, they will be unable to pursue their own cases for lack of
counsel, and [Sydow and Verner, Liipfert] effectively will have destroyed the
claims and cases of Wright and Kennard which [Sydow and Verner, Liipfert] had
agreed to prosecute diligently for Wright and Kennard, but never did.  

O.     To further advance their interests in
their “knife fight without rules” against Wright and Kennard, [Sydow and
Verner, Liipfert], clever and experienced lawyers, could have inserted in their
proposed [Settlement Agreement] provisions whereby Wright and Kennard warranted
and represented they were now the sole owners of all claims against [Sydow and
Verner, Liipfert] being released. [Sydow and Verner, Liipfert] also could have
inserted provisions whereby Wright and Kennard warranted and represented that
they had made no prior assignment or encumbrance to any third party of the
claims against [Sydow and Verner, Liipfert] being released by Wright and
Kennard.  

P.     But neither Sydow nor Verner Liipfert have
demanded, or even requested or suggested, that the proposed [Settlement
Agreement] contain any such protective provisions, even though such normally
are included in client-releases prepared by competent and diligent
lawyers.  Consequently, Wright and
Kennard are entitled to make the assignment herein without violating the
proposed [Settlement Agreement] which soon or ultimately they may be forced by
duress into signing.  

* * * * 








2.     Assignee Holloway agrees to assign the
claims, . . . to an attorney or law firm . . . who will agree to prosecute the
claims against [Sydow and Verner, Liipfert] covered hereby, to the end that the
duress, malfeasance, and malpractice of [Sydow and Verner, Liipfert] shall not
be rewarded.  To the same end, Holloway
further agrees to assist such attorneys in the prosecution of such claims
without charge to Assignors or benefit to himself.       

As evidenced by the plain language of the
Holloway assignment, during the negotiations of the Settlement Agreement,
Wright and Kennard actively sought to divest themselves of the malpractice
claims, claims that were part of the bargained exchange.  Upholding these assignments would undermine
the strong public policy favoring voluntary settlement agreements.  It would encourage parties to negotiate and
execute settlement agreements in bad faith. 
It would incite litigation rather than settling it.  It would produce disharmony and ill will
rather than peace.  In short, our State’s
public policy would be undone.

Wright and Kennard request we countenance
their actions because of the alleged duress. 
However, we already disposed of that issue unfavorably to Wright and
Kennard.  They also argue that the
assignments should be allowed because Pat Holloway did not personally benefit
from the assignments—a meager argument in light of the havoc that could result
if the law were to recognize assignments of claims made under these
circumstances. 

As we already have said, the legal system
condones assignments.  However, here, the
disadvantages to the legal system outweigh the benefits to the parties.  The only ones not hurt by this assignment are
Wright, Kennard, and Holloway.  Everyone
else, including the legal system, are dealt thunderous blows.  If we condoned these assignments, no
agreement could ever be considered “settled.” 
See, e.g., Zuniga, 878 S.W.2d at 317.  We decline to condone Wright’s and Kennard’s
actions and find that, under the circumstances of this case, the assignments
violate the strong public policy of this State favoring voluntary settlement
agreements and are void.  Because we find the assignments to
Pat Holloway void, ownership of the claims remained in Wright and Kennard and
thus were released by virtue of the Settlement Agreement.  See Mallios, 11 S.W.3d at 159.  We overrule this issue.








B.        The Trial Court Erred in Granting
Summary Judgment on Holloway, P.C.’s Claims for Fraudulent Inducement and
Negligent Misrepresentation.  

We now reach the last issue, in which
Holloway, P.C. claims that the trial court erred in dismissing its fraudulent
inducement and negligent misrepresentation claims.  Sydow and Verner, Liipfert asserted in their
summary judgment motion, filed on July 29, 2002, that the “legal malpractice
lawsuit” was barred as a matter of law because Sydow and Verner, Liipfert never
represented Holloway, P.C.  Because Pat
Holloway, P.C. was not a client, they 
owed it no duty.  Sydow and
Verner, Liipfert also claimed Holloway, P.C. was a co-counsel in the underlying
litigation and could not allege that “its contingent interest in that litigation
was diminished” because of Sydow and Verner, Liipfert’s conduct.  Relying on Barcelo v. Elliot, 927
S.W.2d 28 (Tex. App.—Houston [1st Dist.] 1995, aff’d, 923 S.W.2d 575
(Tex. 1996), Sydow and Verner, Liipfert argued that, even assuming they
committed malpractice, Holloway, P.C.’s claims failed for lack of privity. This
argument is misplaced.

As we explain below, we conclude that the
trial judge erred in granting summary judgment on these two causes of
action.  The summary judgment motion did
not mention the fraudulent inducement claim. 
The only ground given for granting summary judgment on the negligent
misrepresentation claim—lack of privity because Holloway, P.C. was not Sydow
and Verner, Liipfert’s client—is not viable in light of the Texas Supreme Court
opinion, McCamish, Martin, Brown & Loeffler v. F. E. Appling Interests,
991 S.W.2d 787, 791 (Tex. 1999).  We
consider the fraudulent inducement claim first.

1.         The Motion Did Not
Address the Fraudulent Inducement                            Claim.








Because a summary judgment is a summary
trial of a claim, our rules and law require that a party may secure a summary
judgment only on those grounds specifically named and discussed in the motion.  McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 342 (Tex. 1993).  This is
a notice requirement, intended to notify the claimant and the trial court of
those claims or elements of claims the opponent is attacking.  Id.  A trial court can enter a summary judgment
only against those claims attacked in a motion for summary judgment.

This summary judgment motion gave Wright,
Kennard, and Holloway, P.C. no notice that the fraudulent inducement claim was
being attacked because the claim was not mentioned in the motion.  As a result, the trial court could not render
summary judgment on it.[18]  Id.  For
this reason, the trial court erred in granting summary judgment on the claim.

2.       Summary Judgment was Wrongly Granted
on the Negligent Misrepresentation Claim.

The trial court also erred in granting
judgment on the negligent misrepresentation claim, but for different
reasons.  Sydow and Verner, Liipfert gave
only two reasons why the claim should fail as a matter of law: (1) Holloway,
P.C. was not their client and therefore was not in privity with it, and (2) the
negligent misrepresentation claim was merely a thinly disguised legal
malpractice claim.  But this position is
not viable in light of McCamish.  See
McCamish, 991 S.W.2d at 791.

McCamish presented the
Texas Supreme Court  with “one precise
question”: whether a third party was precluded from suing an attorney for
negligent misrepresentation under the Restatement (Second) of Torts, section
552, because of the absence of an attorney‑client relationship.  Id. 
The Court squarely answered that question, stating that the theory
of negligent misrepresentation “permits plaintiffs who are not parties to a
contract for professional services to recover from the contracting
professionals.”  Id. at 792.  








In addition, the Court confirmed that a
negligent misrepresentation claim is not a legal malpractice claim.  Id. at 792.  Under negligent misrepresentation, liability
is not based on the breach of duty owed by a professional to his client or
others in privity; instead, liability is based on the “professional’s manifest
awareness of the non‑client’s reliance on the misrepresentation and the
professional’s intention the non‑client so rely.”  Id. 


The scope of the duty imposed on an
attorney to a non‑client is limited to those situations in which (1) the
attorney is aware of the non‑client and intends that the non‑client
rely on the representation, and (2) the non‑client justifiably relies on
the attorney’s representation of a material fact.  Id. at 794.  For purposes of determining whether the non‑client
justifiably relied on the representation, a reviewing court must consider the
nature of the relationship between the attorney, client, and non‑client.  Id.  Generally, a non‑client cannot
justifiably rely on an attorney’s representations when those representations
occur in an adversarial context.  Id.  Also, a non‑client cannot rely on an
attorney’s representations unless the attorney invites that reliance.  Id. at 795.  A non‑client’s claims for negligent
misrepresentation are subject then to rules regarding proof of materiality and
reliance.  Id.          Thus, after McCamish, a
defendant’s claim for negligent misrepresentation will not fail simply by
showing that it did not represent the claimant or that the claimant and the
attorney were not in privity; under McCamish, a third party non‑client
can bring a negligent misrepresentation claim. 
Post-McCamish, whether the plaintiff was represented by the
lawyer or was not in privity with the lawyer, although not necessarily
irrelevant issues, are not the focus of the inquiry.  Id.  

In this case, though, the focus of the
argument was on these non-controlling issues—the claimant’s status as a client
and privity.  Just as in McCamish,
this trial court granted summary judgment on Holloway, P.C’s claims because
Holloway, P.C. was not in privity with Sydow and Verner, Liipfert and,
according to the judgment, they “otherwise owed no duty of care” to Holloway,
P.C.  See id.  Through McCamish we know that the lack‑of‑privity
argument, if given as the only reason for denial of a claim, is incorrect and
unsupportable.  See id.








In addition, the trial court’s decision
that this record proved that Sydow and Verner, Liipfert owed no duty to
Holloway, P.C. on the negligent misrepresentation claim is incorrect.  First, the only reason Sydow and Verner,
Liipfert presented for not owing Holloway, P.C. a duty was that they were not
in privity; we already have held that position untenable if that is the sole
reason given for the claim’s failure. 
Second, if, by chance, the trial court granted the motion because it concluded
for some other reason that no duty was owed, it could have done so only on the
basis of evidence or some other argument that addressed the elements of a
negligent misrepresentation claim.  But,
Sydow and Verner, Liipfert presented no evidence to defeat an element of a
negligent misrepresentation claim and gave no other reasons for the claim’s
failure.  In short, the trial court had
nothing before it to support a conclusion that no duty was owed.  

For all of these reasons, the trial court
erred in granting summary judgment as to the negligent misrepresentation and
the fraudulent inducement claims, and we sustain Wright, Kennard, and Holloway,
P.C.’s fifth issue.

VII.     CONCLUSION.

In conclusion, we
overrule the following issues:

·                     
the
first issue related to the fraud and duress claims;

·                     
the
second issue related to the post-settlement agreement claims;

·                     
the
third issue related to the alleged violation of the disciplinary code;

·                     
the
fourth issue related to the claims assigned to Holloway prior to the execution
of the Settlement Agreement; and

·                     
the
sixth issue related to the denial of the motion for continuance.

We sustain the following issue:

·                     
Holloway
P.C.’s fifth issue, in which it asserts that the trial court wrongly granted
summary judgment on its fraudulent inducement and negligent misrepresentation
claims.   








We therefore affirm all portions of the
judgment except for numbered paragraph 2e in which the trial court held that
“[t]he claims of Pat S. Holloway, P.C. are invalid as a matter of law because
Defendants were not in privity with Pat S. Holloway, P.C. and otherwise owed no
duty of care to Pat S. Holloway, P.C.,” and we remand only that portion of the
case to the trial court for further proceedings.    

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

Judgment
rendered and Opinion filed November 24, 2004.

Panel
consists of Justices Fowler, Edelman, and Frost.  

 











[1]  A qui tam action
is one authorized by statute in which a private citizen sues an individual or
business to recover a penalty, part of which the government or a public
institution will receive.  See Bryan A. Garner, A Dictionary of Modern Legal Usage 728
(2d ed. 1995).





[2]  Four different
types of suits were discussed.  In some,
Sydow and Verner, Liipfert represented only Wright; in some they represented
only Kennard.  For purposes of the issues
in this appeal, however, this distinction is unimportant.





[3]  No record
evidence reflects that Wright, Kennard, or Holloway were ever served with
notice of the motions.





[4]  Crowley &
Douglas, L.L.P. and Timothy D. Crowley (collectively “Crowley Douglas”), who
also represented Wright in the FCA lawsuits, were parties to the Settlement
Agreement but were not parties to the suit below.





[5]  In a
post-submission brief, Wright and Kennard argue that the intervention itself
was not the cause of the duress, it was the fact that appellees asserted claims
to the FCA recovery.  This is a
distinction without a difference. 





[6]  In support of
their allegations, Wright and Kennard provided the trial court with their
affidavits, an affidavit from Holloway, P.C., an affidavit from Claude Welch,
an attorney involved with representing Wright in the qui tam litigation,
and an affidavit executed by Michael Angelovich, an attorney employed with the
law firm of Nix, Patterson & Roach, L.L.P. 
The Nix, Patterson & Roach firm was also involved in representing
Wright in the qui tam litigation. 
Wright and Kennard also furnished an affidavit from a law professor specializing
in legal ethics.





[7]  Wright and
Kennard raise other potential problems with the court’s ruling on this
issue—they claim that Sydow and Verner, Liipfert had no right to pursue their
claims because Wright and Kennard discharged them for cause and that Wright’s
and Kennard’s affidavits prove the hardship the suits imposed on them.  But these claims still are rebuffed by the
general rule we have discussed.  Three
other reasons also support our decision that these claims are without
merit.  First, they have cited no cases
supporting their theory that we should hold the general rule in abeyance
because of the complexity of the suits and their inability to obtain other
counsel because of Sydow and Verner, Liipfert’s claims to proceeds.  Second, we have found no cases that have done
this.  Third, the affidavits represent
Wright’s and Kennard’s states of mind.  Economic duress must be based on the acts of
the opposing party and not merely the necessities of the alleged victim.  See Brown, 837 S.W.2d at 244.





[8]  The distinction between fraud and
duress is that the injury accomplished through fraud is done without the
knowledge of the victim, while with duress, the victim is fully aware of the
illegal element.  25 Am. Jur. 2d Duress & Undue Influence § 2
(1996).  Consequently, some of our
discussion regarding duress applies to our discussion of the alleged
fraud.       





[9]  According to the record, Sydow and
Verner, Liipfert filed suit on behalf of the tribes five days after Wright’s
letter discharging them, and six months before the Settlement Agreement was
executed.





[10]  Wright and
Kennard argue that the attorney-client relationship between Kennard and Sydow
and Verner, Liipfert was not severed because Kennard never discharged Sydow and
Verner, Liipfert.  However, when the
court’s order was rendered, the representation had ended whether Kennard agreed
to it or not.  Cf. State Farm Mut.
Auto. Ins. Co. v. Traver, 980 S.W.2d 625, 627–28 (Tex. 1998) (noting that
subject to the discretion of the court, an attorney may withdraw from a case). 





[11]  This and other factors distinguish Quintero
from the subject case.  In Quintero,
an attorney representing the appellants allowed them to enter into a joint
settlement agreement which gave them a significantly lower award than the
verdict they had received through their jury trial.  See Quintero, 709 S.W.2d at
227–28.  The Corpus Christi appellate
court determined that a contract made in violation of a Disciplinary Rule was
against public policy and was, therefore, void. 
Quintero, 709 S.W.2d at 229. 
However, in that case the attorney-client relationship existed at the
time the clients signed the joint settlement at issue and the fiduciary
relationship was intact, thus, requiring a “closer scrutiny” than would an
arm’s length transaction.





[12]  In the Settlement Agreement,
Kennard warranted that he was represented by counsel.   “KENNARD acknowledges that for purposes of
negotiating and executing this Agreement, that KENNARD has always been represented
by his own counsel and that Nix, Patterson & Roach, L.L.P. has at all times
represented only WRIGHT.”

 





[13]  Rule 166a(g) states: 

Should it appear from the
affidavits of a party opposing the motion that he cannot for reasons stated
present by affidavit facts essential to justify his opposition, the court may
refuse the application for judgment or may order a continuance to permit
affidavits to be obtained or depositions to be taken or discovery to be had or
may make such other order as is just.

Tex. R. Civ. P. 166a(g).  





[14]   Wright and Kennard executed the
assignments to Pat Holloway individually on March 31, 1999; the Settlement
Agreement was executed on April 12, 1999.





[15]  We decline to
construe them as being freely assignable. They involve Sydow and Verner,
Liipfert’s alleged misconduct in representing them in the FCA litigation, and
are, therefore, legal malpractice claims. 
See Greathouse v. McConnell, 982 S.W.2d 165, 172 (Tex. App.—Houston
[1st Dist.] 1998, pet. denied). 
Assignments of other claims against attorneys for misconduct in the
representation of a client are not assignable. 
See Vinson
& Elkins v. Moran, 946 S.W.2d 381, 396 (Tex. App.—Houston [14th Dist.]
1997, writ dism’d by agr.).  In addition, the Texas Supreme Court recently
held that DTPA claims are not assignable. 
PPG Indus.v. JMB/Houston Ctrs. Partners Ltd. P’ship, No. 01-0346, 47
Tex. Sup. Ct. J. 822, 829, 2004 WL 1533274, at *6 (Tex. Jul. 9, 2004).





[16]  Two exceptions to this general rule
exist, but neither applies here.





[17]  In Vinson
& Elkins, this court held that all legal malpractice claims are
not assignable.  946 S.W.2d at 394.    





[18]  In fact, even
in its briefing on appeal, Sydow and Verner, Liipfert never refer to the
fraudulent inducement claim and  refer
only to Holloway, P.C.’s “negligence and negligent misrepresentation
claims.”