Affirmed and Memorandum Opinion filed August 26, 2010.



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00188-CV



 

J.L. CURRY, Appellant

V.

LES PICKETT AND GALLOWAY, JOHNSON, THOMPKINS, 

BURR & SMITH, P.C., Appellees

 



On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 2007-40848



 

MEMORANDUM OPINION

 

       Appellant, J.L. Curry, appeals
a summary judgment in favor of appellees, Galloway, Johnson, Thompkins, Burr
& Smith, P.C. (“the Galloway firm”) and Les Pickett, an attorney with the
Galloway firm, in Curry’s suit for negligence and breach of fiduciary duty.  In
his sole issue, Curry contends the trial court erred by granting summary
judgment because appellees owed him the duties of a professional fiduciary.  We
affirm.

I.   
Background

            The facts pertinent to
our review of the summary judgment are undisputed.  In early 2005, Curry, an
attorney, met another attorney named Michael Wing when Wing used a conference
room in Curry’s office.  On April 8, 2005, Wing contacted Curry about an
investment opportunity.  Wing represented that he specialized in mergers and
acquisitions involving large companies, a client needed a $300,000 “bridge
loan” to serve as short-term financing for a merger between two companies, and “The
Johnson Group” was formed as a subsidiary of one such company to handle the
bridge loan.  Wing also promised to personally guarantee the loan and gave
Curry a one-page “Financial Statement,” summarizing his assets and liabilities.


On the same day, Curry agreed to
extend the loan to The Johnson Group.  Also that day, Wing executed on behalf
of The Johnson Group, and personally guaranteed, both a promissory note and a
security agreement pledging their assets to secure payment of the note.  In the
note, The Johnson Group promised to pay Curry the principle amount of the loan,
plus interest and a transaction fee of $150,000.  Additionally, The Johnson
Group agreed to pay $50,000 to a non-profit designated by Curry; it is not
clear whether this amount was in addition to, or part of, the principal,
although it clearly was not included in the interest and transaction fee.  Wing
told Curry the Galloway firm was involved in the merger transaction and asked
Curry to wire the funds to the firm’s trust account.  Per Curry’s
authorization, on April 8, 2005 and April 11, 2005, separate wire transfers of $175,000
and $125,000, respectively, were made from his bank account to the Galloway
firm’s trust account.[1]

As all parties to this suit agree,
Wing perpetuated a fraud on Curry.  The Johnson Group was a fictitious entity,
and Wing did not intend for the $300,000 to fund any merger of companies. 
Rather, Pickett and the Galloway firm represented Wing as a defendant in a
legal-malpractice case, and Wing intended to use the $300,000 to fund a settlement
of that case.  Wing told Pickett to expect a wire transfer from Curry to fund
the settlement.  At that point, no attorney in The Galloway firm had ever heard
of Curry, much less had any previous relationship or communications with him.  Further,
no attorney in the Galloway firm was present during, or aware of, any
discussions between Curry and Wing.

While the parties to the malpractice
case were attempting to finalize the settlement, Pickett became aware of
another unrelated case involving Wing, in which the court appointed a receiver,
David Fettner, to preside over Wing’s assets.  Pickett contacted Fettner
because Pickett was concerned about whether the $300,000 in the firm’s trust
account were subject to the receivership.  On April 13, 2005, the parties to
the malpractice case appeared for a hearing to ascertain whether the funds were
subject to the receivership.  Fettner was also present and obtained testimony
from Wing.

Wing explained the manner in which he
procured the $300,000 as follows.  A “third party,” from whom Wing sought help
to fund the malpractice settlement, introduced him to Habil Bolin of The
Johnson Group, an entity in Stockholm, Sweden.  Wing spoke with Bolin by
telephone.  The Johnson Group was interested in paying the judgments underlying
the receivership and funding the settlement of the malpractice suit.  However,
The Johnson Group needed to procure additional funds to accomplish this goal
because it was initially unaware of the malpractice settlement and had
contemplated only liquidation of the receivership.  Therefore, The Johnson
Group obtained a $300,000 loan from Curry in exchange for The Johnson Group’s promissory
note.  Wing had no previous contact with Curry and spoke with him by telephone
relative to this transaction.  Curry subsequently wired the funds to the
Galloway firm’s trust account.  There was no documentation of the transaction
between Wing and The Johnson Group, and Wing made no promises to The Johnson
Group in return for its payment; however, although his testimony was not
exactly clear, Wing indicated The Johnson Group desired to liquidate the
receivership so that it could then obtain some of Wing’s assets without
impediment.

On April 26, 2005, Pickett was copied
on correspondence from Fettner to counsel for the malpractice plaintiff,
opining the $300,000 belonged to the receivership and notifying Pickett that
Fettner was claiming the money.  On April 29, 2005, Curry wrote a letter to
Pickett authorizing transfer of the funds to Fettner’s firm.  On the same day,
Pickett transmitted a check for the funds to Fettner.  It is apparently
undisputed that the funds were used to satisfy Wing’s personal liabilities, and
Curry was never repaid.  Wing was subsequently convicted of criminal offenses for
“bridge loan” schemes involving Curry and others and sentenced to federal
prison.  

Curry sued appellees seeking to
recover the $300,000.  Appellees filed a traditional motion for summary
judgment.  On January 21, 2009, the trial court signed an order granting the
motion, ruling that Curry take nothing from appellees, and expressing the order
constituted a judgment on all claims.[2]

II.    Standard
of Review and Issues

A party moving for traditional summary
judgment must establish there is no genuine issue of material fact and it is
entitled to judgment as a matter of law.  See Tex. R. Civ. P. 166a(c); Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215–16 (Tex. 2003). 
A defendant moving for summary judgment must conclusively negate at least one
element of the plaintiff’s theory of recovery or plead and conclusively
establish each element of an affirmative defense.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  If the defendant establishes its
right to summary judgment, the burden shifts to the plaintiff to raise a
genuine issue of material fact.  Id.  We review a summary judgment de
novo.  Knott, 128 S.W.3d at 215.  We take as true all evidence
favorable to the nonmovant and indulge every reasonable inference and resolve
any doubts in favor of the nonmovant.  Id.  When, as in this case, a
trial court’s order does not specify the grounds relied on in granting summary judgment, we must affirm if any of the summary-judgment grounds
are meritorious.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872–73 (Tex. 2000).

Appellees moved for summary judgment
on several grounds.  First, appellees asserted that all Curry’s claims were
barred by the affirmative defenses of quasi-estoppel and equitable estoppel.  Then,
appellees separately challenged each of the four causes of action pleaded by
Curry: breach of fiduciary duty; negligence; conversion; and fraud.

In his sole appellate issue, Curry states
that the trial court erred by granting summary judgment because “appellees owed
[Curry] the duties of a professional fiduciary.”  In the body of his brief,
Curry generally argues that appellees owed him a fiduciary duty which they breached
by paying the $300,000 to Fettner.  However, Curry does not specifically
mention the causes of action on which he challenges summary judgment. 
Arguably, he challenges summary judgment on only his negligence claim because
he asserts in the “Statement of Case” portion of his brief, as well as his
summary-judgment response, that he sued appellees for negligence but does not
mention any of his other claims.  Nevertheless, because Curry’s sole issue
concerns the alleged existence and breach of a fiduciary duty, we liberally
construe his brief as challenging summary judgment on both the negligence and
breach-of-fiduciary-duty claims.  However, we cannot construe Curry’s brief as
challenging summary judgment on his fraud and conversion claims; therefore, he
has waived any error relative to summary judgment on those claims. See Jacobs v. Satterwhite, 65 S.W.3d 653,
655–56 (Tex. 2001). 

Additionally, in his brief, Curry
does not specifically mention appellees’ estoppel affirmative defenses. 
However, as we will further discuss, the essence of these defenses was that
Curry authorized the $300,000 payment to Fettner of which he now complains.  In
his brief, Curry suggests that appellees either did not pay, or should not have
paid, the funds in accordance with his instruction.  Accordingly, we will
liberally construe Curry’s brief as also challenging summary judgment based on
the estoppel affirmative defenses. 

III.    Analysis

Curry’s complaints regarding
appellees’ actions fall within two categories: (1) appellees breached a
fiduciary duty to disburse the funds in accordance with Curry’s instruction,
which corresponds with the breach-of-fiduciary-duty action alleged in his petition;
and (2) appellees breached a fiduciary duty to safeguard Curry’s funds, despite
his instruction, which formed the basis of the negligence claim in his
petition.

 

A.        Breach-of-Fiduciary-Duty Claim


To prevail on a breach-of-fiduciary-duty
claim, a party must establish a fiduciary relationship, breach of the fiduciary
duty, and a resulting injury to the plaintiff or benefit to the defendant. Jones v. Blume, 196 S.W.3d 440, 447
(Tex. App.—Dallas 2006, pet. denied).  Where the underlying facts are undisputed, determination
of the existence, and breach, of fiduciary duties are questions of law,
exclusively within the province of the court.  Meyer v. Cathey, 167 S.W.3d 327, 330
(Tex. 2005) (citing
Nat’l Med. Enters. v. Godbey, 924 S.W.2d 123, 147 (Tex. 1996)).  

In his live petition, Curry alleged
that the funds were placed in appellees’ “escrow account,” which, as a matter
of law, imposed a fiduciary duty on appellees “to see that they were appropriately
disbursed according to the instruction of the party who placed the funds
there.”  Curry then generally alleged that appellees breached this duty.  

In their motion for summary judgment,
appellees asserted there was no such escrow-agent relationship, but even if
such a relationship existed, appellees committed no breach because they did
follow Curry’s instruction by paying the funds to Fettner.  Appellees’ latter
contention, attempting to negate an element of the claim, was interrelated with
their affirmative defense of quasi-estoppel.  The doctrine of quasi-estoppel
precludes a party from asserting, to another’s disadvantage, a right
inconsistent with a position previously taken.  Lopez v. Munoz, Hockema
& Reed, L.L.P., 22 S.W.3d 857, 864 (Tex. 2000).  The doctrine applies
when it would be unconscionable to allow a person to maintain a position
inconsistent with one to which he or she acquiesced, or from which he or she
accepted a benefit.  Id.  Appellees contend it would be unconscionable
to hold them liable for transferring the funds considering that Curry
authorized the transfer.  We conclude that appellees, as a matter of law, both
negated the breach element of Curry’s claim and proved the quasi-estoppel
defense.[3]

Appellees presented uncontroverted
proof that Curry provided no instructions, terms, restrictions, or guidance
when he first wired the funds to the Galloway firm’s trust account.  Then,
there were only two communications between Curry and appellees before appellees
transferred the funds to Fettner: (1) a letter from Curry to Pickett on the day
before the hearing concerning the funds; and (2) the letter from Curry to
Pickett authorizing the transfer, written after the hearing and after Fettner’s
communication claiming the funds.  

The contents of both letters are
pertinent in their entirety.  In the letter before the hearing, Curry wrote:

On April 8, 2005, my wife, Sharon Curry, and I made a
$300,000.00 loan to the Johnson Group.  The loan was funded by a wire transfer
in the amount of $175,000.00 on April 8th and wire transfer in the amount of
$125,000.00 on April 11, 2005.  The purpose of this letter is to certify to you
that Michael Wing is not, and has never been associated with my wife and I as a
partner, joint venturer or in any other capacity pertaining to this loan. 
Additionally, he is not an officer, director, shareholder, employee, agent or
in any other way associated with or involved in my wife’s wholly owned
corporation, Contract Asset Management, Inc.  The $175,000.00 wire was funded
from a line of credit that my wife and I have at Wells Fargo Bank, and the
$125,000.00 wire was funded with money on deposit in the account of Contract
Asset Management, Inc.  I further certify to you that Michael Wing will not
receive any part of the funds that we receive in the form of principal,
interest or transaction fee when the loan is repaid by the Johnson Group.  If
you need any additional information, please contact me.

        

In the subsequent letter, Curry
wrote:

On April 8, 2005, my wife, Sharon Curry, and I made a
$300,000.00 loan to the Johnson Group.  We funded the loan by having our bank
wire $300,000.00 to the trust account of [the Galloway firm].  It is my
understanding that the transaction for which the loan was obtained is ready to
close, and that to facilitate the closing, it is necessary to transfer those
funds to the Fettner Law Firm trust account at [address]. I hereby authorize
the Galloway Firm to transfer the $300,000.00 to the Fettner Firm.

 

In his brief, Curry states that appellees
contravened his instructions because he “expressly told appellees . . . that no
part of the proceeds of the loan transaction was to benefit Wing, personally.” 
Curry later reiterates that he informed appellees “Wing was not entitled to any
part of the proceeds from the loan transaction.”

To the contrary, neither letter
contains any such instructions.  Curry apparently relies on the following
portion of the first letter:  “I further certify to you that Michael Wing will
not receive any part of the funds that we receive in the form of principal,
interest or transaction fee when the loan is repaid by the Johnson Group.” 
This statement did not forbid use of the $300,000 deposited in the trust
account to benefit Wing personally.  Instead, Curry expressed that Wing would
not receive any portion of The Johnson Group’s repayment of the loan to
Curry.  

Then, as appellees correctly assert,
in the subsequent letter, Curry explicitly authorized transfer of the $300,000
to Fettner without any limitation on the purpose for which the funds could be
used.  Despite this authorization, Curry contends that, when both letters are
read together, he effectively expressed the funds could not be used to satisfy
Wing’s personal liabilities.  

Curry relies on his representation in
both letters that the loan was to The Johnson Group and his statement in the
second letter, “It is my understanding that the transaction for which the loan
was obtained is ready to close, and that to facilitate the closing, it is
necessary to transfer those funds to the Fettner Law Firm trust account.” 
However, Curry never specified the nature of the “transaction” for which he
made the loan to The Johnson Group.  Therefore, his letters did not foreclose
the possibility that the loan was made to The Johnson Group to pay Wing’s malpractice
settlement, as represented by Wing at the hearing.  

Curry further argues that he
“confirmed to appellees that [he] had no relationship whatsoever with Wing in
any ‘capacity pertaining to this loan.’” (emphasis added in Curry’s
brief).  Apparently, Curry contends that such a statement essentially informed
appellees the loan was not intended to benefit Wing personally.  However, Curry
made no such statement in his letters.  Indeed, Curry did have a relationship
with Wing pertaining to the loan considering that Wing personally guaranteed
repayment and pledged his own assets as security.  The actual statement,
contained in the first letter, was that Wing “has never been associated with my
wife and I as a partner, joint venturer or in any other capacity pertaining to
this loan.”  Accordingly, Curry represented that Wing was not somehow
affiliated with Curry with respect to the loan.  

Curry also emphasizes that he
“implored” appellees in the first letter, “[i]f you need any additional
information, please contact me.”  However, Curry did not instruct appellees to
contact him for approval or to verify the purpose of the transaction underlying
the loan before transferring the money to another party, but simply invited any
questions appellees may have had.  Consequently, the portions of the letters
cited by Curry did not constitute restrictions on his express instruction to
transfer the funds to Fettner.  

Finally, Curry asserts that appellees
“knew the whole deal stunk of lies and untruths” but nonetheless transferred
the money.  However, Curry cites no summary-judgment evidence showing appellees
knew Wing was defrauding Curry.  In fact, Pickett averred in his
summary-judgment affidavit that no attorney in the Galloway firm was aware of
any representations Wing made to Curry regarding the bridge loan or how Curry’s
funds would be used once they were deposited in the firm’s trust account. 
Therefore, Pickett did not possess any personal knowledge which transformed
Curry’s statement that the “transaction for which the loan was obtained is
ready to close” into effectively an instruction the funds were to be used for solely
a “bridge loan,” as opposed to satisfaction of Wing’s liabilities. 

Accordingly, because appellees
disbursed the funds as instructed by Curry, the trial court did not err by
granting summary judgment relative to the breach-of-fiduciary-duty claim either
on the ground that appellees negated any breach or on their quasi-estoppel defense.

B.        Negligence Claim

The elements of a negligence cause of
action are existence of a legal duty, breach of that duty, and damages
proximately caused by the breach.  W. Invs., Inc. v. Urena, 162 S.W.3d
547, 550 (Tex. 2005).  

In his petition, Curry alleged that
appellees owed him “a duty to safeguard his money with the care required of a
professional fiduciary, or at the very least, that duty of care exercised by
prudent attorneys.”  Curry then alleged several manners in which appellees
violated this purported duty: they disbursed the funds without first consulting
Curry; they disbursed the funds in a manner inconsistent “with what was
represented to” Curry; and they knew or should have known that the disbursement
“to satisfy the work” was not in Curry’s best interest.  

In their motion, appellees contended
they did not commit any breach of a fiduciary duty to safeguard Curry’s funds
that is actionable in negligence and Curry was estopped to present his claim
due to his authorization of the transfer.  We conclude that appellees proved
entitlement to summary judgment on both grounds.  Again, these grounds are
interrelated because Curry not only suggests that appellees committed a breach
of fiduciary duty actionable in negligence but also raises the fiduciary-duty
argument to counter appellees’ quasi-estoppel defense.

Specifically, in his summary-judgment
response and appellate brief, Curry expands on his allegations.  As we have
discussed, Curry suggests that appellees knew of Wing’s fraud and thus they were
negligent by complying with Curry’s instruction to transfer the funds. 
However, as we have also discussed, appellees negated that they knew of the
fraud, and Curry presented no controverting evidence.   

Curry also contends appellees should
have known that Wing was defrauding Curry based on the following “red
flags” raised by Wing’s testimony: payment of Wing’s personal liability was being
arranged and made by persons he had never met—Curry and Bolin; there was no
documentation between Wing and The Johnson Group or Bolin regarding the
transaction; and The Johnson Group was funding Wing’s settlement with no return
obligation on Wing’s part.  Curry argues that, based on these “red flags,”
appellees should have contacted Curry before transferring the funds to Fettner
and the issue is not as “simple” as “[w]e did what we were told.”  Consequently,
the gist of this negligence claim is that appellees owed Curry a fiduciary duty
to safeguard his funds by detecting Wing’s fraudulent scheme and consulting
Curry to determine the true purpose for which he made the loan despite his
instruction to transfer the funds to Fettner.

            Curry cites no authority
to support his proposition that appellees owed him such a fiduciary duty. 
Curry merely makes the bare assertion that “[a] lawyer should hold funds of
another with the care demanded of a professional fiduciary.”  See Tex. R. App. P. 38.1(h) (providing appellant’s brief
must contain clear and concise argument for the contentions made, with
appropriate citations to authorities and record).[4]  

            Nevertheless, in their
motion and brief, appellees supply the authority on which Curry apparently
relies.  As appellees assert, a comment to Texas Disciplinary Rule of
Professional Conduct 1.14, which governs “Safekeeping Property,” states, “A
lawyer should hold property of others with the care required of a professional
fiduciary.”  Tex. Disciplinary R. Prof’l Conduct 1.14 cmt. 1, reprinted in
Tex. Gov’t Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R.
art. X, § 9).  However, appellees moved for summary judgment on the ground that
a violation of the disciplinary rules does not support a private cause of
action.[5]

Although the parties reference the
comment to Rule 1.14, we note that the portion of the actual rule concerning
disbursement of funds provides, “All funds in a trust or escrow account shall
be disbursed only to those persons entitled to receive them by virtue of the
representation or by law.”  Tex. Disciplinary R. Prof’l Conduct 1.14(c).  We do
not necessarily conclude that appellees violated this rule considering they
disbursed the funds pursuant to Curry’s instruction after taking steps to
discern whether they were subject to the receivership.  Regardless, to the
extent Curry contends that appellees violated the fiduciary duty imposed under
this rule, as recognized in the comment, by failing to further inquire whether
Wing was entitled to the funds to pay his personal liabilities, Curry may not
maintain a private cause of action.  

The preamble to the Disciplinary Rules
of Professional Conduct provides, 

These rules do not undertake to define standards of
civil liability of lawyers for professional conduct.  Violation of a rule does
not give rise to a private cause of action nor does it create any presumption
that a legal duty to a client has been breached. . . .  Accordingly, nothing in the rules should be deemed to
augment any substantive legal duty of lawyers or the extra-disciplinary
consequences of violating such a duty.

  

Tex. Disciplinary R. Prof’l Conduct
preamble ¶ 15.  Citing this preamble, our court has stated that the
disciplinary rules “by their terms . . .  do [not] give rise to a private cause
of action.”  Cuyler v. Minns, 60 S.W.3d 209, 214 (Tex. App.—Houston
[14th Dist.] 2001, pet. denied).  Subsequently, our court made a similar
statement although not as absolute:  “[a] violation of the Disciplinary Rules
does not necessarily establish a cause of action . . . .”  Wright v.
Sydow, 173 S.W.3d 534, 549 (Tex. App.—Houston [14th Dist.] 2004, pet.
denied) (emphasis added).  In Wright, we refused to recognize a private
cause of action when the appellant failed to cite any case in which a court
held that a cause of action existed based on the disciplinary rule at issue under
similar, or any, facts.  See id.

In the present case, Curry fails to expressly
mention Rule 1.14, challenge appellees’ contention that this rule does not create
a private cause of action, or cite any authority recognizing such an action, much
less under facts similar to this case.  Specifically, Curry cites no authority holding
that a third-party who unilaterally deposits funds in an attorney’s trust
account and then instructs the attorney to disburse the funds may claim the
attorney committed a breach of fiduciary duty actionable in negligence by failing
to evaluate, or consult with the third-party regarding, the propriety of the
disbursement.  Therefore, we decline to recognize such a cause of action.  See Jones
v. Blume, 196 S.W.3d at 449–50 (holding third-party had no cause of action
against an attorney for breach of fiduciary duty based on an alleged violation
of Rule 1.14).[6]

Accordingly, the trial court did not
err by granting summary judgment relative to the negligence claim either on the
ground that appellees committed no breach of  fiduciary duty actionable in
negligence or on their quasi-estoppel defense.

In sum, the trial court properly
granted summary judgment in favor of appellees.  We overrule Curry’s sole issue
and affirm the trial court’s judgment.

 

 

                                                                        

                                                                              
/s/        Charles W. Seymore

                                                                                         
  Justice

 

Panel consists of Justices Yates,
Seymore, and Brown.









[1]
The record reflects both Curry and his wife made the loan, but his wife is not
a party to this suit.





[2]
Curry also sued Fettner and his law firm, who both filed a counterclaim, but
the record reflects Curry’s claim was subsequently settled, and the counterclaim
was dismissed.





[3]
Appellees also moved for summary judgment based on the theory of equitable
estoppel, an affirmative defense which, requires, among other elements, a false
representation or concealment of material fact and detrimental reliance on the
misrepresentation.  Johnson & Higgins of Tex., Inc. v. Kenneco Energy,
Inc., 962 S.W.2d 507, 515–16 (Tex. 1998).  This theory is inapplicable in
this case because appellees did not cite, or present evidence, of any false
representation or concealment of material fact made by Curry; it is certainly
undisputed that Curry was defrauded by Wing and was not a party to any fraud.  Unlike
equitable estoppel, quasi-estoppel requires no showing of misrepresentation and
detrimental reliance.  Eckland
Consultants, Inc. v. Ryder, Stilwell Inc., 176 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2004,
no pet.); see Lopez, 22 S.W.3d at 864.
 Indeed,
despite their use of the term “equitable estoppel,” the portion of appellees’
motion concerning this ground essentially reiterates the quasi-estoppel
contention. Therefore,
we will evaluate only the quasi-estoppel defense.





[4]
The only case Curry cites in his entire argument, other than authority relative
to our standard of review, is Wright v. Sydow, 173 S.W.3d 534 (Tex.
App.—Houston [14th Dist.] 2004, pet. denied).  In Wright, we recognized
that a non-client may have a viable negligent-misrepresentation claim against an
attorney in certain limited situations in which the attorney owes duties to the
non-client.  See id. at 554–55.  However, Curry did not plead a
negligent-misrepresentation claim.





[5]
In their motion, appellees also contended, albeit with respect to the
breach-of-fiduciary-duty claim, that there was no attorney-client or trustee
relationship between Curry and appellees giving rise to a formal fiduciary
relationship and no existing relationship for purposes of imposing informal
fiduciary duties.  See Meyer, 167 S.W.3d at 330–31 (recognizing that fiduciary
duties arise as a matter of law in certain formal relationships, including
attorney-client and trustee relationships; and recognizing an informal
fiduciary duty may result from an existing “moral, social, domestic or purely
personal relationship of trust and confidence”).   It is undisputed Curry was
not appellees’ client, and Curry did not plead appellees were trustees of the
funds or that the parties had an informal fiduciary relationship.  Further, on
appeal, Curry does not challenge appellees’ argument negating any trustee
relationship and any existing relationship imposing informal fiduciary duties
or even mention the possibility of such relationships.  Therefore, we have
considered the only basis on which Curry even suggests existence of a fiduciary
relationship relative to the negligence claim—Rule 1.14.





[6]
In addition to contending that any breach of a fiduciary
duty to safeguard the funds under Rule 1.14 was not actionable in negligence,
appellees also moved for summary judgment on the ground they did not commit such
a breach.  In particular, appellees denied they should have known of the  fraud
before disbursing the funds.  Because appellees proved entitlement to summary
judgment relative to Curry’s “should have known” allegations on the ground that
any breach of fiduciary duty was not actionable in negligence, we need not
consider whether appellees negated any breach.